# Bullock Electric Manufacturing Company, Appellant, *v.* Lehigh Valley Traction Company.

*Mortgage—Real Estate—Fixtures—Electrical generators—Lien of mortgage—After acquired property—Vendor and vendee.*

A manufacturing company made a conditional sale of four generators to a traction company, which were installed in the power plant of the latter, replacing other generators removed, being built into the building as an essential part of the construction for which the plant was erected. Previous to the sale, the traction company had made a general mortgage, duly recorded, to a trustee for the security of its bond-

holders, covering among other property "All its power plant, equipment . . . . and other property, real, personal and mixed, now owned . . . . or which may hereafter be acquired, either by purchase, lease, or otherwise," and also "All electric machines, generators, and all other apparatus" then owned or thereafter to be acquired, and containing a description of the ground upon which the power plant was erected. Subsequently a bill in equity was filed in the circuit court, asking for a receiver for the traction company; and the next day the vendors issued a writ of replevin for the generators. A receiver was later appointed, and finally the trustee acting under order of the circuit court foreclosed the mortgage and all the property described therein was sold, and purchased in the interest of the bondholders. In an action of replevin by the vendor against the vendee, in which the receiver and a bondholder intervened, the court below found as a fact that the generators were permanently installed as a necessary part of the power plant. *Held,* (1) that as between the vendors and the bondholders, the generators became part of the realty, and were bound by the lien of the mortgage; and (2) that the receiver and bondholder had a right to intervene in the suit.

Argued Jan. 30, 1911. Appeal, No. 228, Jan. T., 1911, by plaintiff, from judgment of C. P. Lehigh Co., June Term, 1903, No. 16, for defendant on case tried by the court without a jury in suit of Bullock Electric Manufacturing Co. v. Lehigh Valley Traction Company and R. E. Wright, et al., receivers, and R. E. Wright, a bondholder, defendants, intervening. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Replevin for four electric generators. Before HEYDT, P. J., specially presiding, without a jury.

The facts appear in the opinion of the Supreme Court.

The portion of the opinion of HEYDT, P. J., relating to the intervention of the receivers was as follows:

The next contention is that the receivers have no standing to defend in this suit; that they have no title in these generators; that they were appointed receivers after the bringing of the replevin suit and that therefore the verdict must be for the plaintiff. It this sound? It is no doubt law that a receiver has no legal title in the assets which he is appointed to collect: Singerly v. Fox, 75 Pa. 112.

The purpose of a receivership being to preserve the property contested for pendente lite, it has no effect of itself upon the title to such property, either to change it or to create a lien upon it: Beach on Receivers, 2.

A receiver of partnership effects cannot maintain an action of trover in his own name against a person who had converted assets of the firm, before his appointment; he must sue in the name of the firm in whom was the legal right of action: Yeager v. Wallace, 44 Pa. 294.

The qualified title of a receiver to the property he is directed to take and hold relates back to the time of his appointment: LURTON, Circuit Judge, in Horn v. Railroad Co., 151 Fed. Repr. 626, 633.

The receiver acquired no title, but only the right of possession as the officer of the court. The title remained in the corporation in which it was vested when the appointment was made: Sigua Iron Co. v. Brown, 171 N. Y. 488 (64 N. E. Repr. 194); Decker v. Gardner, 124 N. Y. 334 (26 N. E. Repr. 814); United Glass Co. v. Vary, 152 N. Y. 121 (46 N. E. Repr. 312); Stokes v. Hoffman House, 167 N. Y. 554 (60 N. E. Repr. 667).

Conceding the principles stated in the foregoing authorities, does it follow that the verdict must be for the plaintiff in this suit?

The receivers were appointed May 4, 1903, by the United States circuit court for the eastern district of Pennsylvania, upon proceedings by bill in equity filed by Tom. L. Johnson, executor, and others, against the Lehigh Valley Traction Company, on their own behalf as creditors, and on behalf of all other "creditors secured or unsecured, of name and nature whatsoever" alleging the insolvency of the Lehigh Valley Traction Company, and its inability to pay its floating indebtedness (enumerating that such "floating indebtedness consists mainly of loans from banks, trust companies and individuals, the proceeds of which have been used in the improvement of the railway lines of said defendant company, the purchase of equipment and in the extension of the incom-

pleted portions thereof, and many of said loans are secured by pledge of stocks and bonds belonging to said defendant") and stating specifically in paragraph 6 that "the Lehigh Valley Traction Company has created and issued its first mortgage four per cent. thirty-year gold bonds to the amount of $3,000,000," etc. All of which allegations were admitted by the defendant corporation in its answer.

When the receivers were appointed it became their duty to protect and preserve for the persons ultimately entitled to it, the estate which came into their hands as the executive officers of the court. They represented not only the corporation but all its creditors as well, and as to the creditors it was their duty to secure all the assets available for their payment. They succeeded to all the rights, and the powers to enforce such rights, that the creditors had before their appointment. The appointment of the receivers, under the facts hereinbefore stated, was made professedly for the protection of the creditors of the insolvent corporation, and the order for the intervention of the receivers in the present suit was made to subserve the rights of such creditors. They then represented the creditors in whose interest they were appointed and they were clothed with all the powers the creditors would have had in acting for themselves.

The receivers, being appointed for the insolvent corporation, on a creditor's bill, are not limited like an assignee for the benefit of creditors, by the rights of the debtor corporation as to property held by it under a conditional sale, but have the rights of a levying creditor. And so are the Pennsylvania authorities.

In Cushing v. Perot, 175 Pa. 66, 76, Chief Justice MITCHELL thus states the general rule as to the powers of receivers: "A receiver represents not only the corporation but all its creditors, and as to the latter it is his duty to secure all the assets available for their payment. For this purpose he succeeds to their rights, and has all the powers to enforce such rights that the creditors before his appoint-

ment had in their own behalf, even though such powers be beyond those which he has as the representative of the corporation alone. As each creditor may sue, the right is equal in all, and common to all, and hence the receiver who represents all alike is the proper party to assert the common right and pursue the common remedy for the common benefit."

In Schwartz v. Keystone Oil Co., 153 Pa. 283, Mr. Justice WILLIAMS in restating some "venerable elementary principles applicable" to receivers, says: "A receiver is the officer, the executive hand, of a court of equity. His duty is to protect and preserve, for the benefit of the persons ultimately entitled to it, an estate over which the court has found it necessary to extend its care."

In Duplex Printing Press Co. v. Pub. Co., 213 Pa. 207, it was held after reciting the facts found by the court below (which facts were almost identical with the facts in the case at bar): "From this it must be assumed that the receiver in this case represented the creditors in whose interest he was appointed, and was clothed with all the powers the creditors would have had in acting for themselves. . . .

"When, therefore, on a creditor's bill, a receiver is appointed for an insolvent corporation, he is not limited like an assignee for the benefit of creditors, by the rights of the debtor corporation as to property held by it under a conditional sale, but has the rights of a levying creditor."

From all of which we conclude that the intervening bondholders or the receivers, or both, are legally entitled and empowered to defend in the present suit.

*Errors assigned* among others were in holding that the generators were fixtures and in entering judgment for defendants.

*Edward Harvey*, with him *W. La Monte Gillette* and *Waite & Schindel*, for appellants.

Annexation is a question of intention: Hill v. Sewald,

53 Pa. 271; White's App., 10 Pa. 252; Piper v. Martin, 8 Pa. 206; Harlan v. Harlan, 15 Pa. 507; Ferguson v. Lauterstein, 160 Pa. 427; Raymond v. Schoonover, 181 Pa. 352; Kinnear v. Scenic Rys. Co., 223 Pa. 390; Carver v. Gough, 153 Pa. 225.

The machinery and appliances of a plant do not pass with the real estate upon which it is operated on a sale under mortgage judgment, unless it was the intention to make the plant part of the realty when it was erected: Vail v. Weaver, 132 Pa. 363; Wick v. Bredin, 189 Pa. 83; York Mfg. Co. v. Cassell, 201 U. S. 344; Kinnear v. Scenic Rys. Co., 223 Pa. 390; Tyson v. Post, 108 N. Y. 217, (15 N. E. Repr. 316); Sisson v. Hibbard, 75 N. Y. 542; General Electric Co. v. Transit Equipment Co., 57 N. J. Eq. 460 (42 Atl. Repr. 101).

*Arthur G. Dewalt,* for appellees.

OPINION BY MR. JUSTICE ELKIN, March 20, 1911:

For the purpose of determining the principal and underlying question raised by this appeal, the case at bar may be considered a controversy between the holders of bonds secured by a first mortgage on the lines, property and franchises of the traction company, and a manufacturing corporation that sold four generators to the traction company to be installed in its power plant and used to generate electric current. The sale was made under the terms of a contract in writing which the court below held, and the parties concede, constitutes a conditional sale. This view of the transaction is concurred in here. We, therefore, start with the proposition that as between the vendor and vendee the agreement entered into constituted a conditional sale of the property in dispute. If the rights of creditors had not intervened, appellant clearly acted within its legal rights in proceeding to reclaim the four generators under the terms of the contract. It is asserted on one side, and denied on the other, that the rights of creditors had attached in such manner as to

subject the four generators to sale by proper legal process as part of the realty. A brief recital of the facts is necessary to a proper understanding of the legal principles involved. In 1899, the traction company duly executed, delivered and caused to be recorded a first mortgage upon its lines, property and franchises. After the mortgage was recorded all parties dealing with the traction company had constructive notice of the terms and conditions of the lien thus created as a security to the holders of the bonds. The mortgage had been of record for more than two years at the time appellant agreed to sell and appellee company agreed to purchase the four generators in dispute. The mortgaged property was generally described as follows: "All and singular its lines of railway now constructed, or which it may hereafter construct, or acquire, and all its power plant, equipment, cars, rights, privileges, franchises and other property, real, personal and mixed, now owned and held as hereinafter set forth, or which may be hereafter acquired, either by purchase, lease or otherwise." The mortgage also contains a description of the lot of ground upon which the power plant, including machinery, electrical equipment and the four generators in dispute, was erected. Another clause of the mortgage declared it to be the intention of the mortgagor to grant to the trustee named in the mortgage not only the lines either constructed or to be constructed, and the real estate owned or to be acquired, but also, "all passenger cars, and all other rolling stock and equipment, engines, boilers, dynamos, electric machines, generators and all other apparatus," then held by the company or which might thereafter be acquired for use in operating the lines of street railway. At the time the mortgage was recorded the contract to purchase these four generators had not been made, but when the agreement for the sale of the generators was concluded, the contracting parties had record notice of the security given to the bondholders under the terms of the mortgage. One of these terms was that all generators as well as other equipment and

apparatus then held by the traction company, or that might thereafter be acquired by it, for use in operating the street railway system, were subject to the lien of the mortgage. The learned court below has found as facts that the generators were permanently installed in the power plant; that they replaced other generators removed; that they were necessary to the operation of the business of the company; and that they were part of the realty described in the mortgage. It is true these generators were not part of the realty, and did not belong to the traction company when the mortgage was executed, but they were subsequently acquired and permanently installed and therefore came within the express terms of the mortgage. It is perfectly clear that if the claim of ownership had not been set up by appellant, the purchaser at the foreclosure sale would have taken title to the generators as part of the realty. This proposition cannot be seriously questioned. The generators were permanently built into the power plant and were an essential part of the construction for which the plant was erected. They were as permanently attached to the realty as any other machinery or apparatus of this character can be attached to a building. On this branch of the case there is no escape from the conclusion that the generators were permanently installed in the power plant and were attached in such manner and for such a purpose as to make them a part of the real estate. While this is true in fact, it does not follow as a matter of law, that the contract made by appellant whereby it sold the generators to the appellee company upon the condition that title should not pass until all of the installments of the purchase price were paid in full, is not binding as between the parties themselves. Such contracts are binding and the law will enforce them as between the contracting parties. But a different question arises when the rights of creditors intervene. This brings us to the consideration of another question raised by this appeal. The appellee company became financially involved, defaulted in the payment

of interest on its bonds and as a result of these conditions, a bill in equity was filed in the circuit court of the United States for the eastern district of Pennsylvania asking for the appointment of receivers. The bill was filed May 1, 1903, and receivers were appointed May 4, 1903. The receivers filed their bonds and proceeded to take charge of the business of the insolvent corporation under the direction of the court. Subsequently to the appointment of receivers the trustee named in the mortgage acting under an order of the circuit court proceeded to foreclose the mortgage on the interest of the bondholders. The mortgage was foreclosed and all of the property described therein, including the generators in dispute, that is, if these generators are considered within the description of the mortgage and were part of the real estate described, was sold. We assume the property was purchased in the interest of the bondholders and that they claim the benefit of whatever security the mortgage gave them. Appellant sued out the writ of replevin May 2, 1903, one day after the bill asking for the appointment of receivers had been filed and two days before the receivers were in fact appointed. It is contended that there were no execution creditors at the time the writ of replevin issued and that no other class of creditors can dispute the title of a vendor who makes a conditional sale reserving title until the purchase price is fully paid. As to personal property, unless in exceptional cases, this position correctly states the general rule of law not only in our own state but in many other jurisdictions. But even as to personal property a vendor who makes a conditional sale cannot assert his title against an execution creditor who has levied upon the property so sold. Such a sale is within the meaning of the law fraudulent as against a levying creditor. When a general creditor has obtained a judgment upon which an execution has been issued and a levy has been made, a lien is created against the property so seized. In such a case the rights of the levying creditor are superior to those of a vendor of personal property who

makes a conditional sale of the same, reserving title in himself until the purchase price is paid: Ott v. Sweatman, 166 Pa. 217. Unsecured creditors have no lien until judgment has been entered and execution issued, but when these steps have been taken their rights are superior to a vendor who sought to retain a lien upon the property sold until the purchase price was paid. The situation is necessarily different where the machinery sold is intended to be permanently attached to a building, or power plant, as an integral and component part of the construction necessary in conducting the business for which the structure was erected. When the generators in dispute here were permanently installed in the power plant, they became part of the realty, and as such were subject to the lien of the mortgage. The learned court below has found as a fact that they were permanently installed and were a necessary part of the power plant. The evidence fully warrants this finding which in our opinion controls the rights of the parties to this controversy. As to all the property bound by the mortgage, the rights of the bondholders are superior to those of appellant. Duplex Printing Press Co. v. Publishing Co., 213 Pa. 207, in many of its features rules the present case. A writ of replevin is effectual for the delivery of personal property only: Roberts v. Dauphin Deposit Bank, 19 Pa. 71. If the article, or thing, the possession of which is sought to be recovered in such an action, has been so changed in character as to be no longer in the category of personal property, but has become a component, permanent and necessary part of the realty, this form of action would not lie. This rule is subject to some modification as between a vendor and vendee who covenanted otherwise in a case where the rights of creditors are not involved. In the case at bar the generators as found by the court were part of the realty and the title to the same passed to the purchaser at the foreclosure sale. If authority need be cited to sustain the position of appellees, namely, that the generators being subsequently to the execution of

the mortgage permanently attached to the realty, thereby becoming subject to its lien, and that a foreclosure sale divested this lien and passed title to the purchaser, it may be found in the following cases: Morris's App., 88 Pa. 368; Albert v. Uhrich, 180 Pa. 283; Muehling v. Muehling, 181 Pa. 483; Shmaltz v. York Mfg. Co., 204 Pa. 1; Kinnear v. Scenic Rys. Co., 223 Pa. 390.

We cannot agree with the contention of counsel for appellant that this is a case between the vendor company on one side and the vendee company on the other. It was the duty of the receivers to intervene for the purpose of protecting the rights of creditors. This doctrine has been recognized and asserted in many of our cases: Cushing v. Perot, 175 Pa. 66; Duplex Printing Press Co. v. Publishing Co., 213 Pa. 207; State Bank of Pittsburg v. Kirk, 216 Pa. 452; People's Bank v. Stroud, 223 Pa. 33.

As to the intervention of the receivers and the bondnolders, the learned court below acted clearly within its discretionary powers, and in the opinion filed has given convincing reasons for every position taken. The case was considered with very great care by the learned judge who heard it in the court below and his findings of fact and conclusions of law are amply sustained by the evidence and the settled rules of law applicable to such cases. No useful purpose will be served by discussing several other incidental questions raised by this appeal. The opinion of the learned court below properly disposes of all of them.

Assignments of error overruled and judgment affirmed.