**MEDICAL TOWER CORPORATION et al.
v. OTIS ELEVATOR CO.**

No. 6749.

Circuit Court of Appeals, Third Circuit.

May 9, 1939.

Edmund R. Finegan and Earl G. Harrison, both of Philadelphia, Pa. (Saul, Ewing, Remick & Saul, of Philadelphia, Pa., of counsel), for appellants.

Richardson Dilworth, of Philadelphia, Pa. (Murdoch, Paxson, Kalish & Green, and Edmonds, Obermayer & Rebmann, all of Philadelphia, Pa., of counsel), for appellee.

Before BIGGS and CLARK, Circuit Judges, and KALODNER, District Judge.

KALODNER, District Judge.

This appeal involves the construction of the conditional sales act in force in Pennsylvania as applied to elevators in a thirty-story office building in Philadelphia, "The Medical Tower."

In February, 1931, the appellee, Otis Elevator Company, entered into conditional sale contracts with Arey-Hauser Company as conditional vendee, under the terms of which Otis agreed to supply and install four elevators and elevator equipment in the Medical Tower Building. The elevators were duly installed by December, 1931. The conditional sale contracts were filed in the Prothonotary's office of Philadelphia County in May, 1932. Arey-Hauser Company were general contractors, under contract with Medical Tower Corporation (the owner of the building and one of the appellants) for the construction of the building. The Pennsylvania Company for Insurances on Lives and Granting Annuities,

the other appellant, was the trustee under a construction mortgage whereby the construction of the building was to be financed. This mortgage was executed prior to the installation of the elevators and contained an after-acquired property clause covering the elevators and their equipment.

Arey-Hauser Company paid only part of the contract price for the elevators and the equipment referred to, and ultimately the appellee filed a suit in replevin to recover the elevators, joining the Medical Tower Corporation and the Pennsylvania Company (etc.) as defendants, the latter company being in possession as mortgagee at the time suit was filed. At the trial of the cause to the court without a jury, the learned court below filed an opinion, made findings of fact, and filed an order entering judgment for the appellee. The judgment was in special form and contained a provision permitting the plaintiff to remove the elevators and equipment from the building. The appeal is from that judgment.

The court below based its decision upon the conditional sales act of Pennsylvania, Act of 1925, P.L. 603, as amended by the Act of 1927, P.L. 979, 69 P.S.Pa. § 361 et seq., as construed by the Pennsylvania cases. The conclusion was that the elevators in an office building were fixtures *not* so attached to the realty as *not* to be severable without material injury to the freehold (section 7 Second of the Conditional Sales Act, 69 P.S.Pa. § 404, second subd.). The court held as a consequence of this conclusion that the reservation of property in the goods attached was *not* void. With this conclusion we cannot agree.

Section 7 Second of the Conditional Sales Act reads as follows:

"Second. As against an owner, a prior mortgagee, or other prior encumbrancer of the realty, who has not assented to the reservation of property in the goods, if any of the goods are so attached to the realty as not to be severable without material injury to the freehold, the reservation of property in the goods so attached shall be void, notwithstanding the filing of the contract or a copy thereof, unless such injury, although material, be such as can be completely repaired, and the seller before retaking such goods, furnishes or tenders to such owner, prior mortgagee, or encumbrancer, a good and sufficient bond conditioned for the immediate making of

such repairs. 'Prior,' as used in this paragraph, refers to the time of attaching the chattels to the realty."

The record establishes that:

(a) Medical Tower Corporation is an owner of the realty within the meaning of the above quoted section.

(b) The Pennsylvania Company is a prior mortgagee of the realty within the meaning of the above quoted section.

(c) Neither appellant assented to the reservation of property in the goods.

The only question then is, Are the elevators so attached to the realty as to be severable without material injury to the freehold?

If the elevators are so severable, the reservation of property in the goods is valid and the replevin action should succeed; otherwise, the reservation of property in the goods is void and the replevin action should fail.

We are under a duty to adopt that construction of the Conditional Sales Act adopted by the highest court of record in Pennsylvania. The proper criterion by which we are to be guided in seeking such construction is to be found in Central Lithograph Company v. Eatmor Chocolate Company, 316 Pa. 300, 175 A. 697.

There the title to machinery installed for permanent use in a manufacturing plant, and necessary for its operation as a complete going concern, was in dispute. The claimants were:

(a) A prior mortgagee of the manufacturing plant.

(b) The receiver of the mortgagor and owner of the plant.

(c) The conditional vendor of the machinery.

The machinery had been installed in the plant without notice to or knowledge of the mortgagee.

The Supreme Court of Pennsylvania decided in favor of the prior mortgagee (who had subsequently become the owner of the realty at a foreclosure sale upon the mortgage), holding that the reservation of property in the goods was void because the goods were so attached to the realty as not to be severable without material injury to the freehold.

In arriving at this conclusion, the Supreme Court of Pennsylvania held that the words "freehold" and "realty" meant the

plant in its complete integrity, and that the words "material injury to the freehold" meant material injury to the operating plant, and were not confined to injury to the physical structure of the building (316 Pa. page 309, 175 A. 697). In the course of its opinion, the Pennsylvania Supreme Court made an exhaustive review of the authorities, quoting for its principal authority the following language of Chief Justice Gibson in Voorhis v. Freeman, 2 Watts. & S., Pa., 116, 117, 37 Am.Dec. 490, as follows:

"It is true we ruled in an unreported case (Chaffee v. Stewart), that the spindles and other unattached machinery in a cotton-mill, were personal property for purpose of execution, on the authority of certain decisions to that effect, because we were indisposed to be wise above what is written; but an examination of their foundation would probably have led us to a different conclusion. It is unnecessary to pass the learning of the subject in review, as a clear bird's-eye view of it has been spread before the profession by Mr. Justice Cowen in Walker v. Sherman (20 Wend. [N.Y.] 636), from which it is evident that no distinctive principle pervades the cases universally, and that the simple criterion of physical attachment is so limited in its range, and so productive of contradiction even in regard to fixtures in dwellings to which it was adapted before England had become a manufacturing country, that it will answer for nothing else. My objection to the conclusion drawn from it in that case, is that the court adhered to the old distinction when the question related to a woolen factory, instead of following out the principle started by Mr. Justice Weston in Farrar v. Stackpole (6 Greenl. [154], 157 [19 Am. Dec. 201]), which must, sooner or later, rule every case of the sort. The courts will be drawn to it by its liberality and fitness, while they will be drawn away from the old criterion by its narrowness and want of adaptation to the business and improvements of the age. By the mere force of habit, they have adhered to it in almost all cases after it has ceased to be a guide in any but a few; for nothing but a passive regard for old notions could have led them to treat machinery as personal property when it was palpably an integrant part of a manufactory or a mill, merely because it might be unscrewed or unstrapped, taken to pieces, and removed without injury to the building. It would be difficult to point out any sort of machinery, however complex in its structure, or by what means soever held in its place, which might not with care and trouble be taken to pieces and removed in the same way, and the greater or less facility with which it could be done, would be too vague a thing to serve for a test. It would allow the stones, hoppers, bolts, meal-chests, skreens, scales, weights, elevators, hopper-boys, and running gears of a grist-mill, as well as the hammers and bellows of a forge, and parts of many other buildings erected for manufactories, to be put into the class of personal property, when it would be palpably absurd to consider them such. * * * A cotton-spinner, for instance, whose capital is chiefly invested in loose machinery, might be suddenly broken up in the midst of a thriving business, by suffering a creditor to gut his mill of everything which happened not to be spiked and riveted to the walls, and sell its bowels not only separately but piecemeal. A creditor might as well be allowed to sell the works of a clock, wheel by wheel. * * * The bare walls of the building would be comparatively of little value. They might perhaps answer the purposes of a barn; but so might the walls of a dwelling, when deprived of their doors and windows, and why are these considered a part of a dwelling? Simply because it would be unfit for the purpose of a dwelling without them. What, then, is demanded in the case of a building erected for a manufactory, but an application of the same principle? Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold."

Despite the language and the decision in the Eatmor case, however, the learned court below, sustaining the plaintiff's position, held that the decision in the Eatmor case was confined to manufacturing plants. "The ruling," says the learned court below, "was in consequence no more than a reiteration of the old doctrine that chattels incorporated with a manufacturing plant become real estate. A reading of the opinion shows this to be the dominating thought throughout." [22 F.Supp. 4, 7].

We are constrained to differ from the learned court below on this point. As a matter of fact, the opinion in the Eatmor case places reliance in part on decisions in

Pennsylvania cases which do not involve factories or manufacturing plants. On page 307 of 316 Pa., 175 A. 697, of this opinion, it cites Clayton v. Lienhard, 312 Pa. 433, 167 A. 321, where it was held that an automatic sprinkler system installed in a large public garage became a part of the freehold. On page 308 of 316 Pa., 175 A. 697, the opinion cites Bullock Electric Mfg. Co. v. Lehigh Valley Traction Co., 231 Pa. 129, 80 A. 568, where electric generators purchased on a conditional sale agreement and attached to a power plant were held to have become part of the realty, and not recoverable in replevin as against a prior mortgagee.

Power plants and garages are obviously not manufacturing plants or factories, and the fact that the Eatmor case relies on such precedents effectually disposes of the argument that its decision is "expressly limited" to manufacturing plants.

Aside from these illustrations, there is nothing in the language or tenor of the opinion in the Eatmor case which leads us to believe that the ruling is so limited in its application. The case decides merely that certain fixtures in a particular class of realty are so essential to the utilization of that realty for the purpose for which it was intended, that the severance of the fixtures destroys its efficiency as an operating unit; more specifically, that machinery is so indispensible to the operation of a piece of realty used for manufacturing purposes that the machinery must be considered a part of the freehold. It is no departure from this rule, but rather adherence to it, to hold that elevators are so indispensible to the operation of a thirty-story office building as a single or operating unit that the utilization of the realty for the purpose intended is destroyed by the removal of those elevators, and that, therefore, the elevators must similarly be considered as constituting part of the realty or freehold. It is hardly necessary to point out that, once one accepts the doctrine that the word "freehold," as used in the Conditional Sales Act, embraces (when applied to a certain class of buildings) the realty in its "complete integrity," it follows inevitably that in the case of a "'skyscraper'" office building the severance of the elevators would effect a material injury to such freehold; wherefore, under the specific provisions of Section 7 of the Act, the reservation of property in the goods (in the conditional sales agreement) is void.

The learned court below seems to have assumed that in the Eatmor Chocolate case and kindred cases, the Pennsylvania Appellate Courts have set up factories or manufacturing plants in a special category, and have applied to them a principle of law differing from that applicable to any other class of realty. This is not so. What in our opinion the Supreme Court of Pennsylvania has done is to set up a *generic* rule involving the application of the conditional sales act to certain classes of realty, of which manufacturing plants are a *specific* instance. That this is so is evidenced by the decisions in the garage and power plant cases hereinabove referred to. The generic rule, *as applied to the said classes of realty,* holds that the words "material injury to the freehold" mean injury to the operating plant as a whole; the specific instance involves the application of the more general rule to manufacturing plants (which are embraced within the above mentioned classes of realty).

The Pennsylvania cases cited on pages 10 and 11 of the appellee's brief do not disturb this conclusion. The furniture, shades and awnings in an apartment house are not indispensible to its operation. Apartments can be let unfurnished and without shades or awnings. Furniture and tableware in a hotel are, of course, such examples of personalty as could hardly ever be considered as part of realty. The case of American Laundry Machinery Co. v. Miners' Trust Co., 307 Pa. 395, 161 A. 306, cited by the appellee, is expressly distinguished in the Eatmor Chocolate case, 316 Pa. at page 308, 175 A. 697. As for Wickes Bros. v. Island Park Ass'n, 1911, 229 Pa. 400, 78 A. 934, that case was decided prior to the enactment in Pennsylvania of the uniform conditional sales act. Moreover, the decision is opposed to the later case of Bullock Electric Mfg. Co. v. Lehigh Valley Trac. Co., 231 Pa. 129, 80 A. 568, relied upon in the Eatmor case (316 Pa. page 308, 175 A. 697).

Far from limiting the application of the Eatmor Chocolate case to manufacturing plants, the courts of Pennsylvania have applied the same rule to dwelling houses. In Holland Furnace Company v. Suzik et ux., 1935, 118 Pa. Super. 405, 180 A. 38, the Superior Court of Pennsylvania declared void the reservation of title in a conditional sale contract for a furnace in a dwelling, basing its decision specifically upon the reasoning of the Eatmor Chocolate case, in

addition to other grounds. The court said (118 Pa.Super. page 409, 180 A. page 39):

"True, the cases to which we have referred deal with the installation of machinery or equipment in manufacturing plants. *Nevertheless we think the principle is equally applicable to dwellings.* Judge Reader, in the course of his opinion, very well states that in these modern days a dwelling house essentially consists, not only of the foundation, walls, roof, partitions, floors, etc., but lighting, heating, plumbing, and sewage disposal systems also are regarded integral parts thereof. It is generally known that very few homes are now constructed without provisions for the installing of a furnace in the cellar. A heating plant is regarded as indispensable in this climate, and is usually considered a component part of the building.

"Although this furnace might have been removed without serious injury to either the furnace or the house, its removal would have completely destroyed the heating system." (Italics supplied.)

We hold specifically that as applied to a thirty-story office building the words "freehold" and "realty" as used in Section 7 Second of the Conditional Sales Act of Pennsylvania, as amended, embrace the building considered as a complete going or operating plant; that the words "material injury to the freehold," in the same Section of the Act, mean injury to the building as an operating plant, and are not confined to injury to the physical construction of the building alone; that the elevators are fixtures within the meaning of the said Section of the Act, and that they are so attached to the realty as not to be severable without material injury to the freehold; wherefore the contractual reservation of property in the goods (the elevators) was void as against either or both the appellants.

If equities be balanced, the scales fall for the appellant The Pennsylvania Company (etc.). As was said in Central Lithograph Co. v. Eatmor Chocolate Co., supra, 316 Pa. page 309, 175 A. page 700: "Our holding as we do now can work no hardship on conditional sellers. Before they make delivery of their property to a purchaser whose plant is bound by a mortgage, all they need do to protect themselves is to get the assent of the mortgagee to the removal of the articles in the event of default by the purchaser in his payments."

By reason of the above considerations, the judgment of the court below is reversed and the cause is remanded with directions to enter judgment in favor of the appellants.