232 N.J. Super. 337 (1989)
556 A.2d 1317
JOYCE HALL, INDIVIDUALLY, AND AS ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF SHARONDA COLWELL, DECEASED; HAKIM COLWELL, AN INFANT BY HIS GUARDIAN AD LITEM, JOYCE HALL: AND SALEEM COLWELL, AN INFANT BY HER GUARDIAN AD LITEM, JOYCE HALL, PLAINTIFFS,
v.
LUBY CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY; LARRY MC NEIL, INDIVIDUALLY; OTIS ELEVATOR COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided January 31, 1989.
*339 No appearance for plaintiffs.
Howard M. Davis for defendant Larry McNeil.
Abraham Kinstlinger for defendant Luby Corporation.
Howard I. Braff for defendant Otis Elevator Company (Braff, Ertag, Wortmann, Harris & Sukoneck, attorneys).
VILLANUEVA, J.S.C.
This is a personal injury action against the owner of an apartment building and the designer and installer of the elevator where the accident occurred.
Defendant Otis Elevator Company, who designed, constructed and installed the elevator 58 years before the accident in question, moves for summary judgment to dismiss the complaint and cross claims against it.
The issue is whether one who designs, fabricates and installs an elevator is entitled to the protection of the ten-year statute of limitations afforded in N.J.S.A. 2A:14-1.1. Although the plaintiffs have not opposed this motion, defendant McNeil contends that the statute was never intended to apply to the manufacturer of "stock" items, such as an elevator.
The court holds that the installation of an elevator is "an improvement to real property" because if it were to be removed it would materially damage the real property and subject the owner of the building to fines and penalties, and therefore, the statute applies to the designer, fabricator and installer of it. Accordingly, Otis has the benefit of the statute.

Statement of Facts.
The complaint, filed October 21, 1987, alleges that on May 24, 1986, Sharonda Colwell, was fatally injured on an elevator located in an apartment building where she lived at 49 South Clinton Street, East Orange. The complaint alleges that plaintiffs, Joyce Hall, Hakim Colwell and Saleem Colwell suffered *340 emotional distress as a result thereof and that the accident occurred as a result of the elevator in question being negligently manufactured, assembled, designed, marketed, modified, installed, maintained, repaired, sold or caused to be sold, shipped and/or distributed component parts thereof, by defendant Otis Elevator Company.
The elevator in question was designed and manufactured prior to 1928 and was installed by Otis in January 1928, 58 years prior to this accident.
Otis did not own the property at the time of the accident. Otis did not have a contract to service or maintain the elevator involved at the time of this accident. Otis' contract for maintenance of this elevator was cancelled on February 1, 1981, when it ceased working in that building.
Plaintiffs allege that defendant Luby Corporation, the record owner of the property, is a "dummy" corporation, run solely by defendant Larry McNeil for his benefit and formed by him to avoid personal liability.

The action Against Otis Elevator Company is Barred by the provisions of N.J.S.A. 2A:14-1.1 because it was commenced in 1987, 59 years after the design, construction and installation of the elevator involved in this suit.
Otis Elevator Company designed, constructed and installed the elevator 58 years prior to this occurrence. N.J.S.A. 2A:14-1.1 extinguishes any cause of action arising more than ten years after the performance of construction or services regarding improvements to real property, such as the elevator in question.
The pertinent statute, N.J.S.A. 2A:14-1.1, reads as follows:
10 years; damages for injury from unsafe condition of improvement to real property.
No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the *341 defective and unsafe condition of an improvement to real property, nor for any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.
Although the available materials regarding the legislative history of N.J.S.A. 2A:14-1.1 are "meager and unrevealing," Rosenberg v. Town of North Bergen, 61 N.J. 190, 194 (1972), it is clear that the expanded application of the "discovery rule" to new types of tort litigation was a driving force behind the Legislature's adoption of the statute. E.A. Williams v. Russo Development Corp., 82 N.J. 160, 165 (1980). The discovery rule, first adopted in Fernandi v. Strully, 35 N.J. 434 (1961), holds that a cause of action does not accrue until the defect or negligence complained of is, or should have been, discovered. As Justice Handler observed in E.A. Williams, supra:
Because of the expansion of the discovery rule to new fields, those involved in the design and construction of buildings and other improvements to real property were concerned that their potential liability for injuries caused by defective workmanship would last indefinitely, inasmuch as many defects would often not be discovered or give rise to a claim for damages until an injury had in fact occurred. [82 N.J. at 165.]
In Welch v. Engineers, Inc., 202 N.J. Super. 387 (App.Div. 1985), the date when the ten-year time bar matures under the statute "must be measured from the final date the person claiming repose and immunity from suit furnishes any and all services or construction which it has undertaken at the job site." Id. at 397.
The Appellate Division in Welch, supra, stated:
... we think the Legislature most likely meant that when a person rendered any construction-related services on a particular job, finished them and walked away from the job-site with the work accepted, that person could look back ten years and one day "after the performance or furnishing of such services and construction ...," and know there was repose from liability. [Id. at 396.]
*342 N.J.S.A. 2A:14-1.1 was promulgated, in part, so that designers and builders of improvements to real property would know when their potential liability for an improvement was at an end. The Legislature set that time limitation at ten years. Plaintiffs instituted suit approximately 59 years after the elevator was installed. To permit this case to proceed against Otis would violate both the letter and the spirit of the statute.
The statute has been interpreted, not simply as being a statute of limitation, but, as one defining the substantive rights and abolishing a cause of action against designers, planners, supervisors or constructors of real property improvements ten years after the completion of the improvement. Hudson County v. Terminal Constr. Corp., 154 N.J. Super. 264 (App.Div. 1977), certif. den. 75 N.J. 605 (1978).
The Appellate Division stated:
... Although this statute does set a time limitation on causes of action, it is not actually a statute of limitation. N.J.S.A. 2A:14-1.1 not only bars the institution of suit after the expiration of ten years for a cause of action arising within the ten-year period, but prevents a cause of action from ever arising after a ten-year period. Any harm resulting after that period of time is deemed to be damnum absque injuria. The function of the statute in the latter situation is to define a substantive right rather than to alter or modify a remedy. [154 N.J. Super. at 270.]
While discussing the legislative intent of N.J.S.A. 2A:14-1.1, Justice Handler concluded:
... the statute prevents what might otherwise be a cause of action from ever arising. Injury occurring more than ten years after the performance of the negligent act simply forms no basis for recovery. The injured party literally has no cause of action. [E.A. Williams, supra, 82 N.J. at 167.]
Clearly, Otis falls within a protected class intended to be benefited by the protection of the statute. The Court in Williams determined that even a surveyor falls within the protected class, stating that the statute was:
... intended to terminate the liability of all persons who might be responsible for the existence of "defective and unsafe" conditions through their negligent design, plan, or construction of an improvement to real property. [Id. at 169.]
The statute has withstood constitutional challenges. Rosenberg v. Town of North Bergen, supra; Salesian Soc. v. Formigli *343 Corp., 124 N.J. Super. 270 (App.Div. 1973). In Rosenberg, suit was brought for personal injuries sustained as a result of a fall on a street in 1968 against the company which had done some repaving work in 1935 and its successors in interest, among others. The court held that they were insulated from liability pursuant to the statute, stating:
... [T]here seems no reason not to include within the favor of the statute all to whom this condition [e.g., extension of potential liability] may adhere whether they be planners and builders of structures, roads, playing fields or aught else that by broad definition can be deemed "an improvement to real property." We prefer to read the statute, consonant with what we thus judge to have been the legislative intent, as applying to all who can, by a sensible reading of the words of the act, be brought within its ambit. We therefore conclude that the statute does apply to the facts of this case. [Id. [61 N.J.] at 198.]
In Stix v. Greenway Develop. Co., 185 N.J. Super. 86 (App. Div. 1982), a homeowner sued the builder of his home alleging that negligent construction techniques caused the foundation walls of the house to buckle and collapse. Even though the contractors fraudulently assured plaintiff that the foundation had been built in a professional and workmanlike manner, the Appellate Division held that plaintiff's cause of action was barred by N.J.S.A. 2A:14-1.1 because the house was built more than 17 years prior to the filing of the complaint. Ibid. "Since the language of the statute is plain, unambiguous, and obviously `within the constitutional authority of the lawmaking body which passed it'," the court stated, "`our function is to enforce it according to its terms.'" Id. at 90 (citing Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917)). The constitutionality of a similar statute was recently upheld in Van Den Hul v. Baltic Farmers Elevator Co., 716 F.2d 504 (8 Cir.1983).
The substantive rights granted by the statute are available to Otis in the present case. Plaintiffs allege in their complaint, filed October 21, 1987, that the injury occurred May 24, 1986. Both dates are beyond the statutory period. In Richards v. Union Bldg. and Const. Corp., 130 N.J. Super. 127 (App.Div. 1974), the court held that the operative time within which to *344 measure the ten-year period is the date of the filing of the complaint and not the date of the accident. This action is barred even if the date of the accident were the appropriate one.

An elevator is an "improvement to real property" within the meaning of the statute.
Defendant McNeil contends that N.J.S.A. 2A:14-1.1 was never intended to apply to the manufacturer of "stock" items, such as an elevator, relying upon Wayne Tp. Bd. of Ed. v. Strand Century, Inc., 172 N.J. Super. 296 (App.Div. 1980), in which the court stated:
Clearly, the language and history of N.J.S.A. 2A:14-1.1 manifests a legislative intent to extend the ten-year time-bar to those engaged in the design, planning and construction of improvements to real estate only. The statute was not intended to benefit manufacturers and sellers of products who were uninvolved in the design, planning and construction of improvements to real estate. Product-design alone is not enough to trigger the applicability of N.J.S.A. 2A:14-1.1. ... [Id. at 302; emphasis supplied]
The court recognized this intent, as applied to the facts in dispute, and reasoned that:
... if Kidde [defendant] ... participated to any extent in the design and planning stages of the lighting system and dimmer panel, as fabricated and installed in plaintiff's auditorium, it is entitled to the repose of N.J.S.A. 2A:14-1.1. If, however, Kidde merely sold a stock or shelf item out of its regular inventory or fabricated a product as designed and specified by the electrical engineer or the electrical contractor for this project it was not within the repose of N.J.S.A. 2A:14-1.1. We are satisfied that the Legislature did not intend N.J.S.A. 2A:14-1.1 to extend repose to the designers and manufacturers of all products or suppliers of materials which ultimately found their way into improvements to real estate. Implication in the design and planning stage of the improvement to realty itself or of integral component thereof, not mere design of a fungible product or fabrication of a product from specifications which product is later incorporated in the building, is required. [Id. at 303.]
This analysis received approval in Cinnaminson Tp. Bd. of Ed. v. U.S. Gypsum Co., 552 F. Supp. 855 (D.N.J. 1982), where the court in examining N.J.S.A. 2A:14-1.1 noted that the "statute was primarily intended to protect" architects and contractors. Id. at 862.
*345 In Wayne Tp., supra, the court indicated that further development of the record was necessary to evaluate the role of the manufacturer; while in Cinnaminson Tp., supra, the court noted that the product in question was
mere stock material, available for use in a wide variety of settings, and which incidentally found its way into plaintiff's schools ... The defendant cannot under these circumstances gain the protection of the ten-year statute of repose merely as the result of the fortuity of having the product used as one of many products in the construction of the schools. [552 F. Supp. at 863.]
Therefore, McNeil argues that the focus is not necessarily on the narrow question of what constitutes an improvement to real property, as Otis suggests, but on the broader issue of the class of persons entitled to the protection of N.J.S.A. 2A:14-1.1.
First of all, such a statute is curative or remedial, and should be given a comprehensive and liberal rather than a technical construction. 54 C.J.S., Limitation of Actions, § 72, at 107.
The legislative intent in adopting the statute obviously
was to protect those who contribute to the design, planning, supervision or construction of a structural improvement to real estate and those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended. [Brown v. Jersey Central Power and Light Co., 163 N.J. Super. 179, 195 (App.Div. 1978)]
It must then be determined whether construction of this elevator constitutes "an improvement to real property" within the meaning of N.J.S.A. 2A:14-1.1. Research has failed to disclose any judicial decision in New Jersey whether an elevator is "an improvement to real property" under this statute. Other courts reviewing the issue have employed two basic approaches. One employs a common law fixture analysis. Smith v. Allen-Bradley Co., 371 F. Supp. 698 (W.D.Va. 1974). The other rejects "the vagaries of fixture law" and adopts a "commonsense" interpretation of the phrase. See Pacific Indemnity Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548, 554 (Minn. 1977).
*346 Courts that apply the law of fixtures ask only whether the item in question satisfies the definition of a fixture:
A fixture is a former chattel which, while retaining its separate physical identity, is so connected with the realty that a disinterested observer would consider it a part thereof. [5 Casner, American Law of Property (1952), § 19.2 at 3-4]
The test for determining whether a chattel has become a fixture is (1) whether the chattel has become annexed to some extent to realty; (2) whether it has an appropriate application to the use or purpose to which the realty is devoted; and (3) whether there is an intention on the part of the owner of the chattel to make it a permanent part of the realty. Depending upon the particular facts of each case, courts have held elevators to be chattels and fixtures. Medical Tower Corp. v. Otis Elevator Co., 104 F.2d 133 (3 Cir.1939) (fixture); see also 35 Am.Jur.2d, Fixtures § 109 at 784.
This court believes that the elevator in the instant case might well be a fixture; however, it need not reach that issue. While analogizing to fixture law is helpful in construing the statutory provision, the term "fixture" and the phrase "improvement to real property" are not synonymous: a fixture, by definition, is an improvement to real property, but an improvement to real property need not be a fixture. Keeler v. Commonwealth, 56 Pa. C. 141, 424 A.2d 614, 616 (Pa. Commw. Ct. 1981); see also Cudahy Co. v. Ragnar Benson, Inc., 514 F. Supp. 1212 (D.Colo. 1981).
A taxation case, Bayonne v. Port Jersey Corp., 79 N.J. 367 (1979), interpreting the Business Personal Property Tax Act, N.J.S.A. 54:11A-2, signalled the demise of New Jersey's "institutional doctrine" as the basis for defining a "fixture." Prior to Bayonne, New Jersey subscribed to the institutional doctrine which expanded the definition of fixtures to include even readily removable personal property necessary to the operation of the structure for its particular use. The focus of the institutional doctrine was on the integration of the product into the use of the structure, virtually eliminating the requirement of *347 physical annexation to the extent that removal would materially injure the freehold. See Smyth Sales Corp. v. Norfolk B. & L. Ass'n, 116 N.J.L. 293, 298 (E. & A. 1935).
As noted in Bayonne, the institutional doctrine "had few, if any, defenders." 79 N.J. at 375. It was there abolished and replaced by a fixture definition limited to chattels which if removed would "do irreparable or serious physical injury or damage to the freehold." 79 N.J. at 378.
Obviously, the removal of the elevator would materially damage the freehold just the same as if the heating unit were removed. Both are essential to the operation of the building. This is best exemplified by the strict requirements of governmental agencies which prevent discontinuance or removal of elevators.
In fact, if the elevator were to be removed, the owner would be subject to penalties pursuant to city ordinances and the Administrative Code. For instance, the East Orange rent-leveling ordinance establishes the position of rent leveling administrator in section 2:38-3. That section provides in relevant respects:
... Section 2:38-6. Maintenance of Standards of Essential Services. The landlord shall maintain the same standard of provision of essential services in the common areas and dwelling units as was provided or was required by law or lease at the date the tenancy was entered into. Essential services shall include, but not be limited to maintenance, heat, air-conditioning, hot and cold water, elevators, escalators, electricity, furniture, furnishings and equipment, as provided for in Chapter 159 of this code. [Emphasis supplied]
Violations of this section subject the landlord to the penalties set forth in Section 218-20. In addition, the landlord may be penalized by rent deductions ordered by the Rent Leveling Administrator. For each days deprivation of an essential service, a deduction of two percent (2%) of the tenants monthly rent shall be ordered.
Chapter 159, section 87 of the East Orange City code provides:
Suspension of Services or Facilities
(a) No owner, operator or occupant of a residence shall cause any service, facility, equipment or utility, which is required to be supplied by the provisions of this chapter or by any of the provisions by the code of the City of East Orange or which is required under the terms of an executed lease or rental *348 agreement, to be removed from or discontinued for an occupied dwelling unit or rooming unit except for necessary repairs, alterations, or emergency or for such other reason as may be permitted pursuant to those sections of this chapter or other ordinance of the city applicable to such services, facility, equipment or utility....
See also N.J.A.C. 5:10-12.3:
Elevator service shall not be suspended except where unavoidable or where necessary to provide servicing or repairs and then only for the minimum period of time necessary to effectuate such servicing or repairs....
A Superior Court of Pennsylvania has decided this issue. In Mitchell v. United Elevator Co., Inc., 290 Pa.Super. 476, 434 A.2d 1243 (Super.Ct. 1981), plaintiff, injured while entering an elevator in an apartment building, alleged that the elevator car did not stop evenly with the building floor. Defendants were the building owner, the company which held the contract for the maintenance of the elevator and Westinghouse, which had designed and installed the elevator in 1950, 24 years before this accident. Plaintiff's case against Westinghouse was premised on alternative theories of negligence and strict liability. The trial resulted in a verdict against Westinghouse for negligent design. On appeal, the court held that the Pennsylvania statute, 42 Pa. C.S. § 5536, markedly similar to N.J.S.A. 2A:14-1.1, was one of repose and that it is not merely a bar to recovery, but rather completely abolishes any cause of action against such designer of improvements to real property after the expiration of 12 years following completion of such improvement. 434 A.2d at 1249.
In Luzadder v. Despatch Oven Co., 834 F.2d 355 (3 Cir.1987), Judge Brotman considered whether the Pennsylvania statute comparable to N.J.S.A. 2A:14-1.1 protects manufacturers. He noted that the statute was passed as a result of lobbying efforts of trade associations of architects, professional engineers and general contractors and was meant to protect these groups rather than manufacturers. Based on this analysis and the absence of a ruling by the Pennsylvania Supreme Court, Judge Brotman concluded that when that court decides the issue they will not extend the law's coverage to manufacturers. *349 The dissent in Luzadder went only as far as the analysis in Wayne Tp. and would require a determination whether the product giving rise to the claim was specifically designed for the property or was simply selected from stock items for the property.
This holding in Mitchell is consistent with that of our Appellate Division in Hudson County, supra, and Stix, supra, which also held that the New Jersey statute limiting causes of action for improvements to real property is directed at substantive rights and is not merely a statute of limitations. In fact, the court in Wayne Tp. Bd. of Ed. v. Strand Century, Inc., supra, impliedly held an elevator to be an improvement to real property, citing with approval Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (Ark.Sup.Ct. 1970), where the court held that a similar statute of repose applied to a defendant who manufactured and installed an elevator in an office building. 172 N.J. Super. at 303, n. 3.
The Wayne Tp. case, supra[1], held that a dimmer panel wired to operate diverse stage systems and the projection room of a new auditorium was "an improvement to real estate" within the applicable statute of limitations. 172 N.J. Super. at 302.
The Pennsylvania appellate court in Mitchell, supra, addressed the lower court's ruling that the Pennsylvania statute was not available to Westinghouse because the construction of the elevator system was not the construction of "an improvement to real estate." The trial court had ruled that installing an elevator was more like supplying a ready-made item which was merely incorporated into a building. The Superior Court of Pennsylvania reversed, holding:

*350 We do not agree with the lower court's construction of the provisions of 42 Pa. C.S. § 5536 and accordingly we reverse as to appellant Westinghouse Electric Company. We hold that the construction of the elevator in question in 1950 was the `construction of an improvement to real property.' [Emphasis supplied]
The lower court seems to be likening the building of an elevator system with all its myriad components, motors, cables, wiring and machinery to uncrating and plugging in a television set. The fact that the basic design of the elevator may be identical in different buildings does not render the elevator system any less an improvement to real estate. The term improvement is defined in Black's Law Dictionary.

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intending to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure ... (Black's Law Dictionary, 682 (5th Ed. 1979).
Certainly, the elevator system in this case is as much an improvement to real property as was the insulation material in the ceiling of the warehouse in the Freezer Storage Inc. v. Armstrong Corp. case cited above. (476 Pa. 270, 382 A.2d 715 [1978]). [Mitchell, supra, 434 A.2d at 1249-50.]
Judge Wickersham's opinion in Mitchell is equally applicable to the facts of the instant case. The subject elevator, which was designed, manufactured and installed by Otis well over ten years before the complaint was filed, is "an improvement to real property" for purposes of N.J.S.A. 2A:14-1.1.
Other state courts have reached the same conclusion as in Mitchell, and held that elevators are improvements to real property within the meaning of their respective state statutes. See Ellerbe v. Otis Elevator Co., 618 S.W.2d 870 (Tex.Civ.App. 1981). Therein, a parents' wrongful death suit, alleging that their son's death after a fall in an open elevator shaft was due to the defective design of the elevator that had been designed, manufactured, and sold by defendant was prohibited by a Texas statute which required that suit for damages arising from a defective or unsafe condition of equipment attached to real property be filed within ten years after substantial completion of improvement by any registered or licensed engineer or architect in Texas or "any such person" so performing or furnishing such design, where the elevator company was "any *351 such person" performing or furnishing the design, and an elevator in a multi-story building constituted an improvement to real property.
Construction of a service elevator constitutes an improvement to real property within the meaning of an Ohio governing statute, which is virtually identical to our statute. Jones v. Ohio Bldg. Co., 4 Ohio Misc.2d 10, 447 N.E.2d 776 (Com Pl. 1982). See also Adair v. Koppers Co., 541 F. Supp. 1120 (N.D.Ohio 1982) (applying Ohio law).
No opinion to the contrary has been cited. The consensus of states[2] which have ruled on this issue is that elevators fall within the ambit of the statutes and manufacturers thereof are entitled to the stated-year protection against liability.
New Jersey opinions interpreting the statute suggest that elevator designers and installers are within the class which the Legislature intended to protect and the statute applies to them. See, e.g., O'Connor v. Abraham Altus, 67 N.J. 106, 119 (1975) (glass sidelights in a building held to be an improvement to real property); Brown v. Jersey Central Power & Light Co., supra, (transfer switch assembly cabinet in power plant held to be an improvement to real property); Gilliam v. Admiral Corp., 111 N.J. Super. 370 (Law Div. 1970) (steel ladder at rear of the building ... action barred by ten-year limitation period); Wayne Tp. Bd. of Ed. v. Strand, supra (dimmer panels for auditorium held to be an improvement to real property). If items such as a cabinet, glass sidelights and dimmer panels are deemed to be improvements to real property, designers, manufacturers and installers of elevators also fall within the ambit of N.J.S.A. 2A:14-1.1.
*352 The New Jersey Legislature, in property law statutes, has considered stairways and elevators as improvements to real property. See N.J.S.A. 46:8B-3(d)(ii). The federal government has also addressed the issue in connection with tax code provisions where, in dealing with exempt arbitrage bonds for personnel of education institutions, the term "real property" is defined as follows:
"Land or improvements thereon, such as buildings or other inherently permanent structures thereon (including items which are structural components of such buildings or structures).... The term includes ... items which are structural components of a building such as ... elevators or escalators installed in the building." [Emphasis supplied; see also 26 C.F.R. § 1.856-3(d)]
This holding comports with the definition of "essential services" prescribed by the City of East Orange and the definition of fixtures in both the state taxation law and the Uniform Commercial Code.
The 1972 amendments proposed by the uniform laws commissioners were adopted in New Jersey effective December 1, 1981. See N.J.S.A. 12A:9-313, amended by L. 1981, c. 138 § 23, which left the definition of "fixtures" to local real estate law. The Uniform Commercial Code (1972) Comment 2 states:
This section completely changes the theory of the present New Jersey law. Under R.S. 46:32-14 the security interest is completely void if the goods become affixed to the realty and cannot be removed without material damage.
The fact that the basic design of the elevator may be identical in different buildings does not render the elevator system any less an improvement to real estate.

Conclusion.
Accordingly, Otis is entitled to summary judgment on the grounds that the design, manufacture and installation of the subject elevator constitutes "an improvement to real property." Plaintiffs' claims for damages, as well as the co-defendants' claims for contribution and/or indemnification, are barred by N.J.S.A. 2A:14-1.1.
Motion granted.
NOTES
[1] It should be noted that when this case was decided, shortly after Bayonne v. Port Jersey Corp, supra, (a tax case involving giant cranes), the judges apparently did not know of the abolition of the institutional doctrine. See McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 168-169, n. 5 (App.Div. 1987), certif. den. 108 N.J. 219 (1987).
[2] Between 1963 and 1967, when our statute was adopted, thirty jurisdictions enacted legislation of this type. See Comment, Limitations of Action Statutes for Architects and Builders  Blueprints for Non-Action. 18 Cath.L.R. 361 (1967).