**In re CONTINENTAL AIRLINES, INC., et al., Debtors.**

**AMERICAN AIRLINES, INC., Appellant,**

**v.**

**CONTINENTAL AIRLINES, INC., et al., Appellees.**

**Civ. A. No. 93–11–JJF.**

United States District Court, D. Delaware.

April 2, 1993.

Joanne B. Wills, and John D. Demmy, of Morris James Hitchens & Williams, Wilmington, DE, Steven M. Barna, Richard D. Feintuch, George T. Conway III, and Andrew L. Schlafly, of Wachtell Lipton Rosen & Katz, New York City, for American Airlines.

Laura Davis Jones, and Robert S. Brady, of Young Conaway Stargatt & Taylor, Wilmington, DE, David Boies, and Andrew W. Hayes, of Cravath Swaine & Moore, New York City, Mary Boies, of Mary Boies & Associates, Bedford, NY, for Continental Airlines, Inc.

## OPINION

FARNAN, District Judge.

### I. INTRODUCTION

American Airlines, Inc. ("American") appeals from an order entered by the United States Bankruptcy Court for the District of Delaware on November 24, 1992, denying American's motion to lift the automatic stay in the bankruptcy of Continental Airlines, Inc. ("Continental"). The Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

### II. FACTS

#### A. Background

In 1985 Continental together with a number of other plaintiffs sued American and its parent company, AMR, Inc. for violation of antitrust laws and other state and federal statutes. After four years of costly litigation, American and AMR, Inc. entered into a settlement agreement with Continental. The settlement agreement resolved several pending actions then being litigated between the parties. One of the actions was pending before the Honorable Edward Rafeedie in the United States District Court for the Central District of California.

Among other things, the settlement agreement included a limited covenant not to sue, a dismissal with prejudice of the several pending actions between Continental and American, and a general release statement. Appendix in Support of Opening Brief of Appellant, American Airlines, Inc. ("American's Appendix"), at 179–221. The general release states as follows:

2. *RELEASES.* American and [Continental] each does hereby mutually release, remise, exonerate and forever discharge the other from any and all manner of actions, causes of action, suits, claims, controversies, judgments, damages, liabilities, obligations, costs and demands of any kind or nature whatsoever, in law, in equity or otherwise, which either ever had, now has, or thereafter can, shall or may have by reason of any act, transaction, practice, conduct, omission, matter, cause or thing of any kind or nature whatsoever ... that arose or occurred on or prior to the effective date of this Settlement Agreement, including, without in any way limiting the generality of the foregoing, any and all claims which might be asserted under the federal antitrust laws or the antitrust laws of any state, the Racketeer Influenced Corrupt Organization Act ("RICO"), and any and all claims in any way connected with, mentioned in, suggested in, or relating to, the claims made or the claims that could have been made in the [settled actions].... It is further specifically understood that any act, conduct, or omission occurring prior to the effective date of this Settlement Agreement, but which may continue beyond that date, shall be included within this Release to the fullest extent permitted by law.

American's Appendix, at 196–97. In addition, the settlement agreement expressly provided that the California court would retain exclusive jurisdiction "with regard to the validity, enforcement or interpretation of this Agreement." American's Appendix, at 199. Judge Rafeedie approved the Settlement Agreement on December 18, 1989. American's Appendix, at 52–53, 224–26.

In December of 1990, Continental filed for protection under Chapter 11 of the Bankruptcy Code. Then in June of 1992,

Continental sued American in the United States District Court for the Southern District of Texas. The Complaint, as originally filed, alleged three claims for relief under § 2 of the Sherman Act, 15 U.S.C. § 2. The Amended Complaint contains seven claims for relief; four under § 2 of the Sherman Act, one under § 1 of the Sherman Act, and two state law claims. The majority of the factual allegations in the Amended Complaint focus on alleged predatory pricing practices of American over the last 10 years. The Amended Complaint also includes a verbatim account of a February 1982 conversation that occurred between AMR's President, Robert L. Crandall and Braniff's President, Howard Putnam ("Crandall–Putnam conversation"). Memorandum of Points and Authorities of Continental Airlines, Inc., in Opposition to the Appeal of American Airlines, Inc. ("Continental's Brief"), Exhibit A, at 5.

### B. Proceedings Below

On October 30, 1992 American moved in the Bankruptcy Court for an order modifying the automatic stay pursuant to 11 U.S.C. § 362(d). The Bankruptcy Court held a hearing on American's motion on November 20, 1992. American's Appendix, at 44–106. David W. Burcham was the sole witness that testified at the hearing. Mr. Burcham was one of the attorneys that represented American in the litigation that resulted in the settlement agreement described above. Mr. Burcham testified regarding his involvement in the California litigation and the events that led up to the settlement agreement. He also testified about the settlement agreement itself and the parties' understanding regarding its purpose and effect. Finally, Mr. Burcham testified that American has a "colorable" claim that Continental is barred by the terms of the settlement agreement from introducing the Crandall–Putnam conversation in the Texas action. American's Appendix, at 70–71, 74.

At the conclusion of the hearing, the Bankruptcy Court issued its decision from the bench. The Bankruptcy Court held that there was no "cause" to lift the automatic stay. American's Appendix, at 103.

Applying a three-part test, the Bankruptcy Court first found that Continental would be prejudiced by the "opening of another litigation front with resultant expenses, possible diversion of parties who are critical at this juncture in bringing about a resolution to this Chapter 11 case." American's Appendix, at 103–04. Second, the Bankruptcy Court found that American would suffer no hardship if the stay remained in place because American has the opportunity to present the issue to the Texas court. American's Appendix, at 104. Finally, as to probability of success on the merits, the Bankruptcy Court stated,

> I take note that the prepetition litigation [California litigation] involved the CRS system. We are dealing in the Texas courts with a different type of alleged violation by American. Inasmuch as there is only the one question with respect to the release language of the agreement, it appears that the problem can first be brought before the District Court in Texas.

American's Appendix, at 104.

### III. DISCUSSION

### A. Standard of Review

■ The standard of review to be applied by a district court on an appeal of a bankruptcy court decision depends on the nature of the issues presented on appeal. Factual determinations of the bankruptcy court are subject to a clearly erroneous standard. Bank.R. 8013; *In Re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983), while legal determinations are subject to de novo review. *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989).

■ There is no dispute in the record as to the facts presented below. The only question raised on appeal is whether the undisputed facts establish cause sufficient to modify the automatic stay. This is a legal conclusion subject to plenary review. *See FRG, Inc. v. Manley (In re FRG)*, 919 F.2d 850, 854 (3d Cir.1990) (exercising plenary review over a bankruptcy court's order denying a motion to lift the automatic stay); *Airline Pilots Ass'n, Int'l v. Conti-*

*nental Airlines, Inc. (In re Continental Airlines, Inc.),* 145 B.R. 404, 408 (D.Del. 1992) (exercising plenary review over an appeal that involved a review of the bankruptcy court's judgment on the pleadings). Accordingly, the Court will consider the issue presented under a de novo review standard.[1]

## B. Is There Cause to Modify the Stay

Relief from an automatic stay is permitted under 11 U.S.C. § 362(d) which states in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause....

11 U.S.C. § 362(d). Section 362(d) must be read in conjunction with § 362(g) which allocates the burden of proof in motions seeking relief from the stay. Section 362(g) states:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

The parties adopt opposing views on the correct application of this burden of proof. Continental contends that it has the burden of proving that there is not "cause" to lift the stay only *after* American has established a prima facie case for "cause." American, on the other hand, contends that it does not have the burden of coming forward with a prima facie case showing cause, but that the burden of proof at all times rests with Continental. Because the Court is persuaded that American has established a prima facie showing of cause to lift the stay, the Court will direct its attention to whether Continental has met its burden under § 362(g) of showing why the stay should not be lifted.

■ There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. Rather, in resolving motions for relief for "cause" from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant. In balancing the competing interests of the debtor and the movant, Courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. *See Int'l Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.),* 938 F.2d 731, 734–37 (7th Cir.1991).

### 1. Prejudice to Continental

■ The Bankruptcy Court concluded that the prejudice to Continental is the "opening of another litigation front with resultant expenses" and the possible diversion of parties critical to the bankruptcy proceedings. American's Appendix, at 104. A de novo review of the record convinces the Court otherwise. With regard to the possible diversion of parties critical to the bankruptcy proceedings, the Court notes that Continental is presently litigating, at its own initiation, a full blown lawsuit over similar issues in Texas. Responding to a very discreet motion in California will cause at most a minimal diversion of the attention of parties critical to the ongoing bankruptcy proceeding.

Moreover, Continental will be required to address this issue in Texas whether the

---

1. The Court notes that district courts in this circuit have held that a bankruptcy court's decision on a motion to lift the automatic stay for cause may be reversed only for abuse of discretion. *See, e.g., Hohol v. Essex Indus., Inc. (In re Hohol),* 141 B.R. 293 (M.D.Pa.1992); *In re FRG,* 115 B.R. 72 (E.D.Pa.1990). But, the Court is persuaded that the proper standard of review is determined by the nature of the issues involved. Where, as here, there is no dispute as to the facts established below, and the only issue remaining is whether the facts, as established, support a finding of cause, the Court concludes the proper standard of review is de novo.

stay is lifted or not. Both parties acknowledge that the contemplated proceeding in California would involve, at most, the filing of a motion with briefs and perhaps oral argument. The difference between filing briefs and preparing for oral argument in California as opposed to Texas is negligible in terms of added litigation expenses and diverted attention. And certainly, the increase in litigation expenses to the extent anticipated by American's proposed motion, does not, by itself, justify denying American's requested relief from the automatic stay. *See Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 250 (D.Colo.1990) (citing *Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178 (3d Cir.1982)); *accord In re Todd Shipyards Corp.*, 92 B.R. 600, 603 (Bankr. D.N.J.1988). For these reasons, and because Continental did not present evidence below establishing otherwise, the Court concludes that Continental would not be prejudiced by allowing American to litigate in California the discreet issue of whether the settlement agreement bars Continental from introducing the Crandall–Putnam conversation in the Texas litigation.

### 2. Balancing of Hardships

■ With regard to the balancing of hardships, the Bankruptcy Court concluded that the balance of hardships fell with Continental because "there is nothing preventing American from filing something other than a counterclaim in the Texas court with respect to that language and a determination by that Court as to how it should be resolved—there or California." American's Appendix, at 104. Considering this issue de novo, the Court concludes that the evidence shows that the balance of hardships weighs in favor of American.

Continental initiated a complex antitrust suit against American in Texas relying in some measure on the Crandall–Putnam conversation. American contends that the general release provision of the settlement agreement from the previous California litigation precludes Continental from introducing the conversation in the Texas action because it took place prior to the effective date of the California settlement agreement. Continental agreed to have the Cali-

fornia district court retain exclusive jurisdiction to interpret the scope and meaning of the settlement agreement, including the release provision. Continental now seeks to avoid this contract by hiding behind the automatic stay. The hardship this situation presents to American is the possibility that a district court not familiar with the California litigation and the resulting settlement agreement will interpret the agreement in such a way as to dilute its intended purpose and effectiveness.

In contrast, allowing the California court to decide this issue will pose no significant hardship to Continental. Any hardship that may befall Continental as a result of lifting the stay is minimized by permitting American to only file the proposed motion to determine the scope of the general release as it applies to the Crandall–Putnam conversation.

Balancing the significant hardship that American faces of potentially losing the benefit of the settlement agreement, against the minor hardship Continental will face in terms of minimally increased litigation expenses convinces the Court that the stay should be lifted.

### 3. Probability of Success on the Merits

■ The third factor the Court must consider in assessing the propriety of lifting the automatic stay is whether the movant has some probability of success on the merits in the proposed litigation. The Bankruptcy Court concluded that this factor also weighed in favor of Continental. Apparently, the Bankruptcy Court found that American's probability of success on the merits is slight because the California lawsuit was based on American's activities involving computer reservations systems, whereas the Texas lawsuit involves alleged predatory pricing.

Considering this issue de novo, the Court concludes that American has some probability of succeeding on the merits. The question to be resolved by the California court is whether, given its broad language, the mutual release bars Continental from introducing in the Texas litigation—as evi-

dence or otherwise—the Crandall–Putnam conversation. At the bankruptcy hearing Mr. Burcham testified for American that the settlement agreement arguably precludes Continental's use of the conversation. Continental produced no evidence to the contrary. The Court concludes that there is at least some probability that the words "hereby mutually release ... and forever discharge the other from any and all manner of actions, ... liabilities, ... costs and demands of any kind or nature whatsoever ... which either ever had, now has, or thereafter can, shall or may have by reason of any act [or] conduct ... that ... occurred ... prior to the effective date of this Settlement Agreement," may bar the introduction of the Crandall–Putnam conversation in the Texas litigation. Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case. *Accord In re Fernstrom Storage & Van Co.*, 938 F.2d at 737; *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 578 (Bankr.D.Del.1992). Given the Court's conclusions above that the balance of hardships weighs in favor of American, the Court concludes that American's probability of success is sufficient to support modifying the stay.

#### 4. Policies Underlying the Automatic Stay

█ As a final consideration, the Court notes that the policies underlying the automatic stay are not implicated by American's present request for relief. As the Appellants note in their Opening Brief, the automatic stay is designed to relieve the debtor "of the financial pressures that drove him into bankruptcy," *see Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1033 (3d Cir.1991) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6296–97), to protect the bankruptcy estate from being whittled away by creditors' lawsuits, *see Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991), and to implement a system where all creditors will be treated equally. *University*

*Med. Center v. Sullivan (In re Univ. Med. Center)*, 973 F.2d 1065, 1074 (3d Cir.1992).

█ The Court finds that none of these purposes is implicated by American's motion to modify the stay. American has not filed a suit against the bankrupt estate. American is not attempting to obtain payment from Continental to the detriment of other creditors. The motion that American proposes to file in California is strictly defensive in nature. The motion will not interfere with the orderly administration of Continental's bankruptcy, or the assets of the bankrupt estate. Therefore, the Court sees no reason not to grant American relief from the stay. *See In re Hohol*, 141 B.R. at 298 ("Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay.") (citing *Carter v. Larkham (In re Larkham)*, 31 B.R. 273, 276 (Bankr.D.Vt.1983)).

### IV.  CONCLUSION

█ After balancing the competing interests of the parties, and considering the policies underlying the automatic stay, the Court concludes that there is cause to modify the automatic stay. Accordingly, the Court will enter an Order modifying the automatic stay to permit American to file a motion in the District Court for the Central District of California for a declaration that the release provisions of the settlement agreement entered into between American and Continental bars Continental from introducing the Crandall–Putnam conversation in the pending Texas litigation.