In re Stephen H. ROSEN, Debtor.

Civil Action No. 95–2426(AJL).

United States District Court,
D. New Jersey.

March 24, 1997.

Peter A. Berman, Robin W. Weiner, Matawan, NJ, for Appellants.

Martin S. Weisberg, Spear and Hoffman, West Trenton, NJ, for Appellee.

## OPINION

LECHNER, District Judge.

This is a bankruptcy appeal ("Bankruptcy Appeal") filed by debtor, Stephen H. Rosen,[1] ("Debtor"), from final orders entered on 6 March 1996 ("6 March 1996 Order") and 27 March 1996 ("27 March 1996 Order") by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").[2] Appellate jurisdiction rests with this court pursuant to 28 U.S.C. § 158(a).

In the 6 March 1996 Order, the Bankruptcy Court denied a motion by the Debtor to cram down[3] his mortgage ("Mortgage") to its fair market value. The 27 March 1996 Order granted a request for relief from the automatic stay ("Automatic Stay") by the mortgagee, and appellee in the instant matter, the Nationsbanc Mortgage Corporation

1. Pursuant to an order of consolidation, dated 7 June 1996, the matter of *Stephen Rosen v. Nationsbanc Mortgage Corp*, Civil Action No. 95–2425(AJL) was consolidated with the matter of *Sharon A. Rosen v. Nationsbanc Mortgage Corp.*, Civil Action No. 96–2426(AJL).

2. In support of the Bankruptcy Appeal, Debtor submitted: Appellant's Brief ("Appellant's Brief").

   In opposition to the Bankruptcy Appeal, Nationsbanc submitted: a Brief in Opposition ("Appellee's Brief").

   Included in the record of appeal are: 11 April 1996 Designation of Record and Statement of Issues of Debtor Pursuant to Bankruptcy Rule 8006 ("11 April Designation of Record"), with Exhibits A through G attached; 11 March 1996 Designation of Record and Statement of Issues ("11 March Designation of Record"), with Exhibits A through I attached, attached as Exhibit D to 11 April Designation of Record; Debtor's Addendum to Designation of Record and Statement of Issues ("Debtor's Addendum"), dated 25 March 1996, with Exhibits A through B attached, attached as Exhibit E to 11 April Designation of Record; Nationsbanc Addendum to Designation of Record and Objection to Debtor's Designation of Record ("Nationsbanc Addendum"), dated 25 March 1996 and 29 March 1996, with Exhibits A through B attached; Transcript of Hearing on 22 February 1996 ("22 February 1996 Tr."); Transcript of Hearing on 27 March 1996 ("27 March 1996 Tr.").

3. " 'Cram down' is a term of art in bankruptcy cases.... In Chapter 13 cases, it refers to elimination of the unsecured portion of a lien under ... [S]ections 506(a), 1322(b)(2), and 1325(a)(5)" of the United States Bankruptcy Code ("Bankruptcy Code"). *In re Jones*, 201 B.R. 371, 372 & n. 1 (Bankr.D.N.J.1996).

of New York ("Nationsbanc"). For the reasons stated below, the 6 March 1996 Order and the 27 March 1996 Order are affirmed.

*Facts and Procedural History*

On 10 March 1995, Debtor filed a voluntary petition ("Petition") for relief in bankruptcy pursuant to Section[4] 1301 *et seq.*[5] Appellant's Brief at 6. Among the assets of the Debtor was his principal residence real estate property located at 315 Ridgewood Avenue in Glen Ridge, New Jersey ("Residence Property"). Appellee's Brief at 2; Appellant's Brief at 6. The Residence Property was encumbered by a first purchase money Mortgage, held by Nationsbanc,[6] in the amount of $400,000. Appellant's Brief at 6; *see also* Mortgage, attached as Exhibit F to 11 March Designation of Record.

Debtor proposed a Chapter 13 repayment plan (the "Plan") which provided payments for the Mortgage to the Trustee of the Plan in the sum of $5,859.00 per month for fifty-five months. *See* Plan, attached as Exhibit A to 11 March Designation of Record. The Plan sought to cram down the Mortgage to $290,000, the fair market value of the Residence Property. *See* Plan; Appellee's Brief at 2.

On 21 September 1995, a notice of motion to cram down the Mortgage ("Motion to Cram Down the Mortgage") was filed by the Debtor in the Bankruptcy Court. Appellee's Brief at 2. Nationsbanc filed opposition and a cross motion to dismiss the Petition or, alternatively, to vacate the automatic stay ("Motion to Dismiss or to Vacate the Automatic Stay"). *Id.* The Motion to Cram Down the Mortgage was heard by the Bankruptcy Court on 22 February 1996 ("22 February Hearing").

At the 22 February Hearing, Nationsbanc argued cram down was inappropriate. *See* 22 February 1996 Tr., 3. Debtor argued the Mortgage could be modified because it took additional collateral in the personal property of the Debtor, removing it from the anti-modification protection of Section 1322(b)(2).[7] Appellee's Brief at 2. At the 22 February Hearing, however, Debtor could not identify any additional security taken outside of the Principal Residence. *See* 22 February 1996 Tr., 8. The Bankruptcy Court reserved entry of the order denying the cram down for seven days, allowing Debtor time to review the Mortgage to determine whether additional collateral had been taken. *Id.* at 3.

By letter, dated 28 February 1996, ("28 February Letter") counsel for Debtor informed the Bankruptcy Court:

> Please be advised that [counsel for Debtor has] reviewed the documents supplied by [Nationsbanc] and it appears that there is no additional security which was received by [Nationsbanc].

*See* 28 February Letter, attached as Exhibit B to Nationsbanc Addendum to Designation of Record. The 28 February Letter indicated a proposed final order denying the Motion to Cram Down the Mortgage would be forthcoming. *Id.* The 6 March 1996 Order was entered denying the Motion to Cram Down of the Mortgage. *See* 6 March 1996 Order.

On 27 March 1996, the Bankruptcy Court heard the Motion to Dismiss or to Vacate the Automatic Stay. The Bankruptcy Court denied the motion to dismiss, but granted relief to Nationsbanc from the Automatic Stay. Appellee's Brief at 3. The Bankruptcy Court reasoned because it denied the Debtor's application for a cram down, the Debt-

---

**4.** All references to "Section" herein refer to the Bankruptcy Code, Title 11 of the United States Code.

**5.** The Petition was apparently filed shortly before the commencement of a trial for foreclosure brought by Nationsbanc against Debtor in the Superior Court of New Jersey. *See* Appellee's Brief at 2.

**6.** The Mortgage was originally held by Goldome Realty Corporation but was subsequently assigned several times and is now held by Nationsbanc. *See* Memorandum of Law in Opposition to

Debtor's Motion to Cram Down Secured Creditors Claim, attached as Exhibit A to Addendum to Designation of Record.

**7.** Section 1322(b)(2) provides that, in a Chapter 13 plan, a debtor may

> modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is debtor's principal place of residence,* or of the holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

Section 1322(b)(2) (emphasis added).

or's nonpayment of adequate protection to Nationsbanc, coupled with the large shortfall in equity, entitled Nationsbanc to relief from the Automatic Stay. *See* 27 March 1996 Tr., 15–16. The 27 March 1996 Order was entered granting relief from the Automatic Stay.

Debtor now seeks review of the 6 March 1996 Order and the 27 March 1996 Order.

*Discussion*

### A. Standard for Review of Determination of Bankruptcy Court

The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal.

Legal conclusions of a bankruptcy court are subject to *de novo* or plenary review by the district court. *Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir.1997); *Chemetron Corp. v. Jones,* 72 F.3d 341, 345 (3d Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996); *In re Johns,* 37 F.3d 1021, 1023 (3d Cir.1994); *In re Columbia Gas Transmission Corp.,* 37 F.3d 982, 983 (3d Cir.1994), *cert denied sub nom., West Virginia State Dep't of Tax and Revenue v. IRS,* 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995); *In re DeSeno,* 17 F.3d 642, 643 (3d Cir.1994); *In re Maddox,* 200 B.R. 546, 549 (D.N.J.1996); *Matter of Brennan,* 198 B.R. 445, 448 (D.N.J.1996); *In re Hammond,* 156 B.R. 943, 945 (E.D.Pa. 1993), *aff'd,* 27 F.3d 52 (1994).

The factual determinations of the bankruptcy court are not be set aside unless "clearly erroneous." *See* Fed.R.Bankr.P. 8013; *Chemetron Corp.,* 72 F.3d at 345; *In re Indian Palms Associates, Ltd.,* 61 F.3d 197, 203 (3d Cir.1995); *In re Siciliano,* 13 F.3d 748, 750 (3d Cir.1994) (citing *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir. 1992)). On review, the factual findings of a bankruptcy court must "give due regard to the opportunity of that court to judge, first-

hand, the credibility of the witnesses." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d at 1215, 1223 (3d Cir.1995).

Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. *Chemetron,* 72 F.3d at 345.

### B. Section 1322(b)(2)

Chapter 13 debtors "may obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court." *Nobelman v. American Savings Bank,* 508 U.S. 324, 327, 113 S.Ct. 2106, 2109, 124 L.Ed.2d 228 (1993). Section 1322 sets forth the elements of a confirmable plan. At issue here is Section 1322(b)(2), which empowers a debtor to

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is debtor's principal place of residence, or of the holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

Section 1322(b)(2). This provision restricts the ability of a debtor to modify the rights of creditors whose claims are secured only by a mortgage on the debtor's principal residence. *See Nobelman,* 508 U.S. at 328–329, 113 S.Ct. at 2109–10; *Johns,* 37 F.3d at 1023.

Section 506(a) defines allowed secured and allowed unsecured claims.[8] The provision limits a secured creditor's claims to the value of the collateral on which the lien is fixed. *See* Section 506(a); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). To the extent a secured creditor holds a claim in excess of the value of the property, that surplus is deemed to be unsecured. Section 506(a); *Nobelman,* 508 U.S. at 328, 113 S.Ct. at 2109–10. Using the principles of Section 506(a), a creditor's claim may be bifurcated into secured and unsecured portions. The unsecured portion may then be modified (or

---

8. Section 506(a) states,

An allowed secured claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the

estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

Section 506(a).

crammed down) to the fair market value of the property. *See, e.g., Johns,* 37 F.3d at 1023–24; *Hammond,* 27 F.3d at 55–56. Where a secured creditor holds a claim secured only by a security interest in residential real property, however, that claim is protected from modification, or cram down, pursuant to Section 1322(b)(2). *Cf. Nobelman,* 508 U.S. at 327–28, 113 S.Ct. at 2109–10; *Johns,* 37 F.3d at 1023.

Addressing the interplay between Section 1322(b)(2) and Section 506(a), the Third Circuit has interpreted the statutes to permit bifurcation of a security interest in a personal residence when the lien secures the residence and, in addition, takes security in the personal property of the debtor. *Johns,* 37 F.3d at 1024; *Hammond,* 27 F.3d at 52; *Wilson v. Commonwealth Mortgage,* 895 F.2d 123 (3d Cir.1990). The additional collateral removes the mortgage from the protection of Section 1322(b)(2) permitting bifurcation and modification of the claim. *See Sapos v. Provident Inst. of Sav. in Town of Boston,* 967 F.2d 918, 925–26 (3d Cir.1992); *Wilson,* 895 F.2d at 128.

In *Hammond,* the creditors took a purchase money mortgage on the Hammonds' home, as well as "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed...." *Hammond,* 27 F.3d at 53. The Circuit held that where a mortgage creates a security interest in a debtor's personal property, in addition to a lien on the residence, the mortgage is removed from the protection of the anti-modification clause of Section 1322(b)(2). *Id.* at 58. The mortgage may then be bifurcated into secured and unsecured portions pursuant to Section 506(a). *Id.*

In the instant matter, Debtor sought to cram down the Mortgage to its fair market value of $290,000. Citing Section 1322(b)(2) and *In re Eastwood,* 192 B.R. 96 (Bankr. D.N.J.1996), the Bankruptcy Court denied the Motion to Cram Down the Mortgage and precluded Debtor from presenting proofs as to the valuation of the Residence Property. *See* 22 February 1996 Tr., 10–13. Debtor argues Section 1322(b)(2) is inapplicable because the Mortgage took security in

the Debtor's personal property in addition to the lien on the Residence Property. Appellant's Brief at 13. Specifically, Debtor contends the Bankruptcy Court erred because the relevant language in the Mortgage takes security in personalty as well as realty—specifically rents, profits and tax and insurance escrow ("Escrow Account"). *Id.* at 13. The first issue presented in this appeal is whether the language in the Mortgage created a security interest in collateral other than the Residence Property, removing the Mortgage from the anti-modification protection of Section 1322(b)(2).

### a. *Rents and Profits Language*

■ The relevant clause of the Mortgage which defines what property is secured by the Mortgage (the "Secured Property Provision") states:

> TOGETHER WITH all the improvements now and hereafter erected on the property, and all easements, rights, appurtenances, *rents,* royalties, mineral, oil and gas rights and *profits,* water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the 'Property'.

*See* Secured Property Provision, Mortgage at 1 (emphasis added). Debtor claims the reference to rents and profits creates a security interest in personalty which removes the Mortgage from anti-modification protection. Appellant's Brief at 11. Debtor cites *Johns, Hammond, Sapos,* and *Wilson* in support of his argument. These cases, however, are not persuasive in this matter.

Unlike the instant Mortgage, the language contained in the mortgage documents in each of the cited cases expressly attempts to reach personalty in addition to the primary residence realty. In addition to rents and profits, which arise directly from the realty, the mortgages sought security in personalty which exists independent of the realty, such as appliances, machinery, furniture and equipment. *See Johns,* 37 F.3d at 1021 (appliances, machinery, furniture and equipment); *Hammond,* 27 F.3d at 52 (same);

*Sapos*, 967 F.2d at 918 (appliances and wall to wall carpeting); *Wilson*, 895 F.2d at 123 (appliances, machinery, furniture and equipment). These decisions reaffirm the principle that where a mortgage document takes security in collateral that is personalty and not realty, the mortgagee abandons the protection of Section 1322(b)(2).

The task becomes a determination of whether, "in light of the language contained within a mortgage document, a claim can be considered secured 'only by an interest in real property that is the debtor's principal residence.'" *Eastwood*, 192 B.R. at 102 (quoting *In re French*, 174 B.R. 1, 4 (Bankr. D.Mass.1994)). The relevant consideration appears to be whether the mortgage grants an "independent interest" in some form of personalty beyond the principal residence. *See Eastwood*, 192 B.R. at 103–4 (analyzing bankruptcy cases of the Third Circuit, as well as other circuits). Debtor appears to argue the reference to rents and profits constitutes such language. Appellant's Brief at 12.

To determine whether the language in the Secured Property Provision grants an independent interest in collateral beyond the confines of real property, it is necessary to determine what constitutes real property. In the absence of controlling Federal law, the definition of real property will be supplied by the law of the State of New Jersey. *Nobelman*, 508 U.S. at 328, 113 S.Ct. at 2109–10 (citing *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)). Both parties cite N.J.S.A. 46:3–16 for the relevant State definition of real property. This statute states:

> Every deed conveying land shall, unless an exception be made therein, be construed to include all and singular buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditament and appurtenances to the same belonging or in anywise appertaining; and the reversion and reversions, remainder and remainders, *rents*, issues and *profits* thereof, and of every part and parcel thereof.

N.J.S.A. 46:3–16 (emphasis added). The definition contained in N.J.S.A. 46:3–16 essentially mirrors the language of the Secured Property Provision found in the Mortgage, including the reference to rents and profits. Accordingly, the language in the Secured Property Provision, particularly the reference to rents and profits, does not attempt to create a security interest in additional collateral beyond that granted in the Residence Property. Indeed, rents and profits would not exist but for the real property.

■ The Mortgage is not removed from the anti-modification protection of Section 1322(b)(2) by reference to rents and profits in the Secured Property Provision. *See In re Lievsay*, 199 B.R. 705, 709 (9th Cir. BAP 1996) ("additional collateral language in the deed of trust is so closely associated with securing the primary residence that it prohibits Debtor from stripping down the lien under section 1123(b)(5)"); *In re Davis*, 989 F.2d 208, 211 (6th Cir.1993) ("rents, royalties, profits and fixtures" were mere terms of surplusage and did not increase the rights of the mortgagee in the real estate of the debtor); *In re Halperin*, 170 B.R. 500, 501 (Bankr.D.Conn.1994) (same); *Eastwood*, 192 B.R. at 105 (where mortgage simply described "the fee simple absolute, with all its appurtenant hereditaments as defined under common law and as codified in N.J.S.A. 46:3–16," mortgage sought no more than a lien on the fee).[9]

*cf. In re Gain Electronics Corp.*, 117 B.R. 805, 810–11 (Bankr.D.N.J.1990); *Hall v. Luby Corp.*, 232 N.J.Super. 337, 346, 556 A.2d 1317 (Law.Div.1989) ("A fixture is former chattel which, while retaining its separate physical identity, is so connected with the realty that a disinterested observer would consider it a part thereof"). A fixture, then, is a chattel that loses its independent identity when affixed to the realty. Employing the reasoning outlined above, the reference to fixtures in the Secured Property Provision does not remove the anti-modification protection of Section 1322(b)(2).

---

9. The Secured Property Provision also contains a security interest in "fixtures now or hereafter a part of the property." *See* Secured Property Provision. Debtor did not argue this language also removed the Mortgage from the protection of Section 1322. If presented, however, such an argument would be rejected.

Although the term "fixtures" is not included within the definition of realty pursuant to N.J.S.A. 46:3–16, fixtures have been defined as "[g]oods [that] become so related to particular real estate that an interest in them arises under real estate law." *See* N.J.S.A. 12A:9–313(1)(b);

b. *Escrow Account*

■ In addition to the Secured Property Provision, the Mortgage required the Debtor to contribute funds ("Funds") to Nationsbanc on a monthly basis for the payment of yearly taxes and insurance premiums ("Funds Provision"). The Funds Provision provides:

Funds for Taxes and Insurance. Subject to applicable law or to written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest to be paid. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the

purpose of which each debit to the Funds was made. *The Funds are pledged as additional security for the sums secured by this Security Instrument.*

Mortgage, ¶ 2 (emphasis added). The Debtor argues this language created an additional security interest in personalty, removing the Mortgage from the protection of Section 1322(b)(2). Appellant's Brief at 12.

The Bankruptcy Court did not rule on whether the Escrow Account constituted additional security because that argument was not presented at the 22 February Hearing. The Debtor was afforded seven days from the 22 February Hearing to review the Mortgage and advise the Bankruptcy Court of any clause overlooked which might create additional security. *See* 22 February 1996 Tr., 14. By way of the 28 February Letter, Debtor informed the court that no additional security was received by Nationsbanc. *See* 28 February Letter.

The Third Circuit has not addressed the issue of whether funds for taxes and insurance, held in an escrow account, constitute additional security for the purposes of Section 1322(b)(2). In dicta, the Circuit has stated that "creditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. Their recourse, if they wish to avoid modification, is to forego the additional security." *Hammond,* 27 F.3d at 57. (citing 5 Collier on Bankruptcy P 1322.06 at 1322–14–15).

The *Hammond* mortgage, however, was not removed from the anti-modification protection of Section 1322(b)(2) due to a security interest in escrow account funds, but because

*See Eastwood,* 192 B.R. at 104; *Halperin,* 170 B.R. at 501. *See also Davis,* 989 F.2d at 211.

The court deciding *Jones* cited *Hammond,* 27 F.3d at 57–58 and *Wilson,* 895 F.2d at 129 for the proposition that "the Third Circuit [has] specifically rejected the ... contention that [a] security interest in fixtures did not prevent [a debtor] from taking advantage of the anti-modification provision." *See Jones,* 201 B.R. at 375. The court in *Hammond,* however, rejected the argument that a security interest in fixtures or personal property should not bar anti-modification protection simply because the "additional security interest provided for in its mortgage as meaningless standard language

that gives it no additional security as a practical matter." *Hammond,* 27 F.3d at 56. The court permitted bifurcation of the *Hammond* mortgage because it took a security interest in personalty—specifically "appliance, machinery, furniture and equipment (*whether fixtures or not*)." *Id.* at 57 (emphasis added). As well, the issue in the *Wilson* mortgage was not a security interest in fixtures, but a in person property consisting of "furniture, equipment, machinery and appliances." *Wilson,* 895 F.2d at 129. Because fixtures are, by definition, so connected to realty that they lose their independent interest, a reference to fixtures would not defeat Section 1322(b)(2) protection.

of a security interest in appliances, machinery, furniture and equipment. *See Hammond*, 27 F.3d at 53. Nevertheless, courts in this Circuit have cited the dicta in *Hammond*, in conjunction with the strict interpretation of Section 1322 by the Third Circuit, to support the finding of additional security in escrow accounts or insurance proceeds. *See Jones*, 201 B.R. at 375 (security interest in condemnation awards and insurance proceeds is additional collateral allowing the claim to be subject to modification); *In re Crystian*, 197 B.R. 803 (Bankr.W.D.Pa.1996) ("we are constrained to follow the dicta in *Hammond* and find that the security interest in escrow funds contained in this mortgage is additional security."); *In re Pinto*, 191 B.R. 610, 612–613 (Bankr.D.N.J.1996) (modification allowed where mortgage provides that a lien would also attach to certain funds to be held in escrow to provide for payment of yearly real estate taxes and hazard insurance premiums). *But see In re Libby*, 200 B.R. 562, 567 (Bankr.D.N.J.1996) (where debtors do not hold a property interest in money placed in the escrow account, mortgagee cannot be said to be holding a security interest in debtor's property).

By contrast, other courts which have addressed related issues have determined the provision of items such as insurance in a mortgage does not create additional security within the meaning of the Bankruptcy Code. *See Davis*, 989 F.2d at 211 ("we hold that a requirement of hazard insurance with the creditor designated as beneficiary will not ordinarily take a creditor outside the protection of § 1322(b)(2)"); *In re Washington*, 967 F.2d 173, 174 (5th Cir.1992) (credit life and disability insurance does not constitute additional security); *Halperin*, 170 B.R. at 502 (mortgage agreement which took a security interest in certain funds to be held in an escrow account to pay for real estate taxes and hazard insurance premiums did not constitute additional security sufficient to remove creditor from meaning of § 1322(b)(2)); *In re Spano*, 161 B.R. 880 (Bankr.D.Conn. 1993) (additional security interest in casualty insurance proceeds afforded anti-modification protection under § 1322(b)(2) because hazard insurance proceeds have no independent existence apart from the improvements insured

on the realty.); *In re Jackson*, 136 B.R. 797 (Bankr.N.D.Ill.1992) ("[T]he boilerplate language granting the mortgagee the right to receive and use property insurance proceeds in the event of some destruction of the property does not create an additional type of collateral securing the mortgage obligation."); *In re Ireland*, 137 B.R. 65 (Bankr. M.D.Fla.1992) (neither boilerplate language in mortgage nor credit life and disability policies constitute additional security); *In re Braylock*, 120 B.R. 61, 64 (Bankr.N.D.Miss. 1990) ("to hold that ... [fire and casualty] insurance coverage constitutes additional security interest would completely eviscerate the protective exception for residential lenders found in Section 1322(b)(2)").

Many of the courts which have held that insurance proceeds do provide additional security were reviewing mortgages that took an interest in insurance on the life of the debtor, such as credit life or disability insurance, rather than insurance on the property, such as hazard insurance. *See In re Selman*, 120 B.R. 576 (Bankr.D.N.M.1990) (credit life and hazard insurance constitutes additional security); *Transouth Fin. Corp. v. Hill*, 106 B.R. 145, 146–47 (W.D.Tenn.1989) (optional credit life and disability insurance written in connection with loan constitutes additional security); *In re Wilson*, 91 B.R. 74, 76 (Bankr.W.D.Mo.1988) (where creditor took security interest in three insurance policies, including proceeds and return premiums, constitutes additional security); *In re Stiles*, 74 B.R. 708, 710 (Bankr.N.D.Ala.1987) (interest in policy on lives of debtors constitutes additional security).

As stated, to determine whether the language in the clause creates security in "additional collateral" independent of the realty, an examination of the language in the loan documents and the relevant state law must be conducted. *Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110; *Eastwood*, 192 B.R. at 96.

In the instant matter, the Mortgage states: "The Funds are pledged as additional security for the sums secured by this Security Instrument." Mortgage at 4. At first blush, it would appear this language would create a security interest in additional personalty. A

review of the entire Funds Provision and the nature of the Funds contributions demonstrates that the Funds do not constitute additional security because they do not represent a property interest of the Debtor separate from the Residence Property. *Contra Libby,* 200 B.R. at 567 (additional security found in attempt to reach "all money, securities and other personal property on deposit or in [mortgagees'] possession or control").

In *Libby,* the debtors were required to make monthly advance tax payments to the mortgagee, which were placed in an escrow account created by the mortgagee. The court held the use of a tax escrow account was not sufficient to defeat the anti-modification provisions of Section 1322, even though the escrow account was in the possession and control of the mortgagee. The court reasoned that, under state law, once the money was placed in the escrow account, the debtors no longer retained a property interest—"the payments [were] made for the benefit of the mortgagee and the mortgagors do not retain any beneficial interest in the money deposited." *Id.* at 566 (citing *American National Bank & Trust v. Leonard,* 166 N.J.Super. 216, 219, 399 A.2d 663 (App.Div.1979) (internal quotes omitted)).

Similarly, in the instant matter, despite the "additional security" language in the Mortgage, the Funds provided no additional collateral, apart from the realty, to secure the loan. Once the Funds were placed in the Escrow Account, the Debtor lost property interest in the collateral. Unlike language where the security interest is taken in appliances, equipment or machinery, the "additional security" created by the Funds did not have an independent existence and served only to protect Nationsbanc's interest in the Residence Property. The tax contributions protected Nationsbanc from the imposition of a statutory tax lien on the Residence Property while the hazard insurance contributions ensured the Residence Property would be protected in the event of destruction. The Escrow Account was taken not as additional collateral of the Debtor to secure the Mortgage, but was created pursuant to the Mortgage to protect the Residence Property.

The Funds were not included in the Secured Property Provision of the Mortgage and, therefore, "[did] not constitute additional security in the common sense usage of the term in Section 1322(b)(2)." *In re Wright,* 128 B.R. 838, 844 (Bankr.N.D.Ga.1991). Nationsbanc did not receive any additional benefit from the Funds, other than assurance that the Residence Property would be protected. Pursuant to the Mortgage, Nationsbanc was required to return any excess contributions, either through repayment or through a credit in subsequent month payments, based upon the preference of the Debtor.[10] The Mortgage sought no security interest in the proceeds from the insurance, *compare Jones,* 201 B.R. at 376, or in any returned premiums from the insurance company. *See Wilson,* 91 B.R. at 76. In addition, the Funds were contributed, in part, to pay hazard insurance, not credit life or disability insurance, further signifying a nexus to the realty. *See Davis,* 989 F.2d at 211 (recognizing distinction between credit life and disability insurance, which is optional, and hazard insurance, which is usually mandatory); *Spano,* 161 B.R. at 890 & n. 15 ("An interest in hazard insurance is distinguishable from an interest in credit life or disability insurance.") (citing cases).

The payment of taxes are simply part of the ownership interest attendant in title to property in this state. *See* N.J.S.A. 54:4–1 [11].

---

10. The relevant portion of the Funds Provision states,

> If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of the Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.
> Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

*See* Funds Provision.

11. N.J.S.A. 54:4–1 states, in relevant part,

> All property real and personal within the jurisdiction of this State not expressly exempted

Accordingly, "a security interest in the escrow account provided for under the terms of Nationsbanc's mortgage which is secured by the Debtor's principal residence is part of the same security and not actually additional security. It arises out of the definition of real property and should not be considered personalty." Appellee's Brief at 9–10. *See French,* 174 B.R. at 7 ("[t]he existence of collateral which is nothing more than [ ] an enhancement should not result in a forfeiture by the lender of the anti-modification provisions of Section 1322(b)(2)").

The contributed Funds, if any,[12] were paid into an Escrow Account created by Nationsbanc. The Debtor lost any property interest in the Funds once they were placed in the Escrow Account. *See Libby,* 200 B.R. at 566–67. The Funds were earmarked for payment of taxes and hazard insurance. Nationsbanc did not take an interest in the proceeds or in returned premiums. Nationsbanc returned or gave credit for any excess contributions.

The existence of the Escrow Account does not remove the Mortgage from the anti-modification protection afforded by Section 1322(b)(2). To the extent other courts in this Circuit have reached contrary results, *see, e.g., Crystian,* 197 B.R. at 803; *Pinto,* 191

B.R. at 612–613, those opinions are not persuasive. The courts based the holdings on the dicta in *Hammond,* as well as other Circuit opinions which did not specifically address escrow accounts as additional security. The courts rendered a decision without conducting analysis into the nature of the escrow accounts and whether they constituted additional personalty apart from the realty.

The result reached here is consistent with the purpose behind the anti-modification provision, which was intended to increase the accessibility of home mortgage funds to homeowners by assuring lenders that their expectations would not be frustrated. *Nobelman,* 508 U.S. at 332, 113 S.Ct. at 2111–12 ("favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market") (citation omitted); *PNC Mortg. Co. v. Dicks,* 199 B.R. 674 (N.D.Ind.1996) (citations omitted); *Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236, 246 (5th Cir.1984). It would contravene the purpose of Section 1322(b)(2) to find *additional* security in the mere attempt to ensure protection of the primary security, the Residence Property. For these reasons, the 6 March 1996 Order of the Bankruptcy Court is affirmed.[13]

---

from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter.... Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless: a. (1) The personal property so affixed can be removed or severed without material injury to the real property; (2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and (3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or b. The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property. N.J.S.A. 54:4–1.

**12.** Nationsbanc contends "[t]he payment of the real property taxes on this Debtor's residence has been borne solely by Nations[b]anc for more than three years." Appellee's Brief at 10.

**13.** In the Appellant's Brief, the Debtor set forth the statement of issues which were presented on appeal. *See* Appellants' Brief at 3–4. The first three issues presented asked whether the language of the Secured Property Provision and the Funds Provision was "sufficient to negate the anti-modification provided at Section 1322(b)(2)." *Id.* at 4. The fifth issue presented asked whether the Bankruptcy Court erred, as a matter of law, by not permitting Debtor to provide valuation testimony. *Id.* By affirming the 6 March 1996 Order, each of these questions is answered in the negative.

The fourth issue presented asked whether the Bankruptcy Court erred as a matter of law in allowing Nationsbanc to argue, at the 22 February Hearing, "items which were not set forth in [its] certification." *Id.* Debtor appears to contest whether Nationsbanc had the right to defend against the concept of the cram down at the 22 February Hearing. *See* 22 February 1996 Tr., 3. The Bankruptcy Court allowed Nationsbanc to present its argument opposing cram down because, "[i]t's [the Debtor's] burden to prove that [he has] the legal ability to cram down [his] mortgage." *Id.* at 13. The Bankruptcy Court stated that, even if Nationsbanc did not argue the

## C. *Automatic Stay*

■ When a bankruptcy petition is filed, judicial actions against the debtor commenced before the filing of the bankruptcy petition are automatically stayed. *See* Section 362(a);[14] *McCartney v. Integra Nat. Bank North,* 106 F.3d 506, 509 (3d Cir. 1997); *Siciliano,* 13 F.3d at 750. The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and/or reorganization of his or her obligations. *McCartney,* 106 F.3d at 512; *Constitution Bank v. Tubbs,* 68 F.3d 685, 691 (3d Cir. 1995); *Siciliano,* 13 F.3d at 750; *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1204 (3d Cir.1991). Section 362(d) provides that bankruptcy courts may lift an automatic stay "for cause." Section 362(d).[15] Because the Bankruptcy Code fails to provide a definition of "cause", relief from an automatic stay is appropriately granted on a case by case basis. *See Claughton v. Mixson,* 33 F.3d 4, 5 (4th Cir.1994); *Matter of Henry,* 173 B.R. 878, 882 (Bankr.D.N.J.

1993); *In re Borbidge,* 81 B.R. 332, 335 (Bankr.E.D.Pa.1988).

■ A bankruptcy court is granted discretion to determine whether to lift an automatic stay; such discretion is reviewable on an abuse of discretion basis. *See In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1026 (11th Cir.), *cert. denied sub nom Dixie Broadcasting v. Radio WBHP, Inc.,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *Hohol v. Essex Industries, Inc.,* 141 B.R. 293, 297 (M.D.Pa.1992). *See also In re Kissinger,* 72 F.3d 107, 108 (9th Cir.1995) (en banc); *In re C & S Grain Co.,* 47 F.3d 233, 237–38 (7th Cir.1995); *Claughton,* 33 F.3d at 5; *Pursifull v. Eakin,* 814 F.2d 1501, 1504 (10th Cir.1987).

Where the bankruptcy court, however, makes legal determinations in ruling on such a motion, the district court is to exercise plenary review. *See FRG. Inc. v. Manley,* 919 F.2d 850, 854 (3d Cir.1990); *In re Perona Bros. Inc.,* 186 B.R. 833, 836 (D.N.J.1995); *FGH Realty Credit Corp. v. Newark Airport/Hotel Ltd. Partnership,* 155 B.R. 93, 97 (D.N.J.1993); *In re Continental Airlines, Inc.,* 152 B.R. 420, 424 & n. 1 (D.Del.1993);

point, relief could not have been granted as a matter of law based upon the language in the Mortgage. *Id.*

The merits of this issue were not briefed by the parties. It does not appear, however, that error was committed. A court is permitted to raise *sua sponte* the issue of whether a Chapter 13 plan is confirmable. *See* Section 1325(a); *In re Johnson,* 160 B.R. 800, 802 (S.D.Ohio 1993). Accordingly, it was not error for the Bankruptcy Court to allow Nationsbanc to argue items at the 22 February Hearing which were not set forth by certification.

14. Section 362(a) provides, in relevant part,

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of

property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor. Section 362(a).

15. Section 362(d) states, in part,

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including lack of adequate protection of an interest in property of such a party in interest; or (2) with respect to a stay of an act against property under subsection (a) of this section if—(A) the debtor does not have equity in such property; and (B) such property is not necessary to effective reorganization. Section 362(d).

*accord In re Ward,* 74 B.R. 465, 467 (D.N.J. 1987), *aff'd,* 837 F.2d 124 (3d Cir.1988).

### D. *Relief from the Automatic Stay*

■ As stated, a bankruptcy court may grant relief from an automatic stay "for cause" pursuant to Section 362 of the Bankruptcy Code. *See* Section 362(d)(1); *See also Maritime,* 959 F.2d at 1204 ("the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor"). One basis for cause may be where a secured creditor lacks adequate protection because there is a threat the value of the property may decline. *Pinto,* 191 B.R. at 612. A basis for finding lack of adequate protection may arise from the threat of decline due to the "failure to maintain property insurance[,]" or the failure "to provide for real property taxes. . . ." *Id.* (citing *In re Clayburn,* 112 B.R. 434, 435 (Bankr.N.D.Ala. 1990); *In re Briggs Transp. Co.,* 780 F.2d 1339, 1349 (8th Cir.1985); *In re James River Assoc.,* 148 B.R. 790, 796 (E.D.Va.1992), *vacated,* 156 B.R. 494 (E.D.Va.1993)).

■ In the instant case, the Bankruptcy Court granted Nationsbanc relief from the Automatic Stay based, in part, on the failure of the Debtor to keep the Residence Property adequately protected. *See* 27 March 1996 Tr., 15. At the 27 March Hearing, Nationsbanc argued that it "continues [to] incur cost and expenses on [the Mortgage] . . . . [and] continue[s] to pay the taxes and insurance on the [Residence Property.]" *Id.,* 4. Nationsbanc argues it has paid the real estate taxes to prevent "the loss of property through a tax sale or imposition of additional liens

and/or interest and penalties for non-payment." Appellee's Brief at 13.

Debtor argues Nationsbanc was not entitled to direct payments under the proposed Plan, but rather received payments based upon Debtor's right to cram down through the office of the Trustee.[16] Appellant's Brief at 16; *see also* Plan. Debtor further argues: "To the extent that stay relief might have [been] premised on Nationsbanc's not receiving adequate payments, (e.g. because the payments made were pursuant to the Plan [and were] based on a 'cram down' to the value of the real estate), stay relief should not have been granted." Appellant's Brief at 16.[17]

■ As Nationsbanc contends, the finding of a lack of adequate protection arose, in part, because Debtor was not paying real estate taxes on the Residence Property. Appellee's Brief at 13. The failure to provide for real estate taxes may be a basis for finding a lack of adequate protection. Therefore, it was not an abuse of discretion for the Bankruptcy Court to find a lack of adequate protection.

In addition to the lack of adequate protection, it appears the Bankruptcy Court vacated the Automatic Stay after it determined there was a lack of equity in the Residence Property. At the 27 March Hearing, Nationsbanc indicated the balance of the Mortgage to be in excess of $500,000 and the unpaid principal balance to be $386,381.95. *See* 27 March 1996 Tr., 8. Debtor informed the Bankruptcy Court that the asserted fair market value of the property was approximately $290,000.[18] *Id.* Nationsbanc argues that "with every passing quarter the equity

---

**16.** The relevant portion of the Plan states,

    1. The future earnings of the Debtor are submitted to the supervision and control of the Trustee and the Debtor or Debtor's employer shall pay to the Trustee the sum of $5,859.00 monthly for 55 months.

    2. From the payments so received, the Trustee shall make disbursements as follows:

      (a) Full payment in deferred cash payments of all claims entitled to priority under 11 U.S.C. 507.

      (b) Holders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows: The Debtor shall pay [Nationsbanc] the value of $290,000 by

payment to the Trustee. Upon receipt of the $290,000.00, [Nationsbanc] shall furnish a paid Note and Mortgage endorsed for cancellations direction to Peter A. Berman, Esq. *See* Plan.

**17.** It appears Debtor was two months in arrears in making the mortgage payment to the Trustee under the Plan. *See* 27 March 1996 Tr., 16.

**18.** At the hearing, Debtor indicated a different appraisal determined the value of the Residence Property to be approximately $270,000. 27 March 1996 Tr., 8.

[in the Residence Property] diminished." Appellant's Brief at 13.

Based upon the finding of the Bankruptcy Court that there was no equity, or diminishing equity, in the Residence Property, *see* 27 March 1996 Tr., 15, in conjunction with the lack of adequate protection, it was not an abuse of discretion to grant relief from the Automatic Stay. *Contra In re Capodanno*, 83 B.R. 285, 288 (Bankr.E.D.Pa.1988) (failure to make payments not sufficient to vacate automatic stay where mortgagee had equity cushion in property).

Debtor cites *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), for the proposition that the granting of relief from the Automatic Stay constituted error because, even if there was no equity in the property, Debtor had shown the Residence Property was necessary to an effective reorganization. Debtor argues the automatic stay should have been maintained, riot lifted pursuant to Section 362(d)(2) because "the fact that the Chapter 13 was pending shows 'that the property [was] essential for an effective reorganization that is in prospect.'" Appellant's Brief at 17 (quoting *Timbers of Inwood Forest Assocs.*, 484 U.S. at 376, 108 S.Ct. at 633). Debtor argues "Nationsbanc has made no showing to the contrary." *Id.*

This argument lacks merit. The Court in *Timbers of Inwood Forest Assocs.* held the burden to be on the Debtor to show the collateral is "necessary to an effective reorganization." *Timbers of Inwood Forest Assocs.*, 484 U.S. at 375, 108 S.Ct. at 632–33. To determine "[w]hether property is necessary for an effective reorganization requires an examination of whether there is 'a reasonable possibility of a successful reorganization within a reasonable time.'" *In re Sea Garden Motel and Apartments*, 195 B.R. 294, 308 (D.N.J.1996) (citing *Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. at 376, 108 S.Ct. at 633). See *also In re Curtis Center*

*Ltd. Partnership*, 192 B.R. 648, 654 (Bankr. E.D.Pa.1996) (citing *John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assoc.*, 987 F.2d 154, 157 (3d Cir.1993) ("effective reorganization" requires demonstration by Debtor that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed)).

It appears the Residence Property is the major asset of the Debtor in the Plan. *See* Plan. The Bankruptcy Court determined that the Residence Property was not the appropriate subject of a cram down under the Plan. This decision was affirmed in the instant appeal. Because the major asset of the Debtor could not be crammed down, there was not a reasonable possibility of a successful reorganization within a reasonable time.[19] The Bankruptcy Court did not err in its decision to lift the stay.

█ Debtor's final argument is that the effect of the 27 March 1996 Order renders his right to appeal in the district court moot. First, Debtor argues the 27 March 1996 Order enables Nationsbanc to pursue foreclosure proceedings. Because foreclosure proceedings would remove Debtor as owner of the Residence Property, Debtor contends the 27 March 1996 Order obviates his right to appeal.

Debtor next argues, even absent foreclosure proceedings, the 27 March 1996 Order moots the appeal because it removes the Residence Property from the estate of the Debtor. Debtor argues that, assuming the Mortgage is held to be the proper subject of a cram down, the Bankruptcy Court could not grant any relief on remand because the Residence Property "is outside the Bankruptcy Court's jurisdiction by virtue of the [A]utomatic [S]tay being vacated." Appellant's Brief at 18.

When the Bankruptcy Court denied Debtor's motion for stay of the 27 March 1996 Order pending appeal, it advised Debtor of

---

**19.** The record also indicates Debtor and his wife filed a Chapter 11 petition for bankruptcy in 1993. In the Chapter 11 case, Nationsbanc "obtained an order vacating the automatic stay as to the real property which is the subject of this current motion." *See* 3 October 1995 Notice of Cross Motion to Dismiss Debtor's Petition or in the Alternative to Vacate the Automatic Stay as to Real Property ("Notice of Cross Motion"), attached as Exhibit G to 11 March Designation of Record and as Exhibit A to 11 April Designation of Record, ¶ 3. The Chapter 11 case was closed without completion of a successful organization plan. *Id.*

his right to apply to the District Court for such a stay. *See* 27 March 1996 Tr., 15. To date, Debtor has not applied to this court for a stay from the relief of the 27 March 1996 Order pending appeal. The failure to do so undermines Debtor's argument that the 27 March 1996 Order should be vacated due to potential foreclosure proceedings.

The remaining argument is also not persuasive. The 6 March 1996 Order denying cram down has been affirmed in this decision. The matter will not be remanded to the Bankruptcy Court. Accordingly, concerns that the Residence Property is no longer a part of the estate of the Debtor are not relevant. The 27 March 1996 Order is affirmed.

*Conclusion*

For the reasons stated, the 6 March 1996 Order and the 27 March 1996 Order of the Bankruptcy Court are affirmed.